**EXXON CORPORATION and Maine Turnpike Authority**

v.

**George W. KING, Sr., et al.**

Supreme Judicial Court of Maine.

Jan. 13, 1976.

---

Perkins, Thompson, Hinckley, Thaxter & Keddy by Thomas Schulten, Andrew A. Cadot, Portland, Sewall, Strater & Hancock by Frank E. Hancock, York, for plaintiffs.

Smith, Elliott, Wood & Nelson by Randall E. Smith, Charles W. Smith, Saco, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WERNICK, Justice.

A Justice of the Superior Court (York County) has reported this case to us pursuant to Rule 72(b) M.R.C.P. as a companion to *Howard D. Johnson Company et al. v. King and Inhabitants of Town of Kennebunk*, Me., 351 A.2d 524 (1975) decided this day. Whereas, the Howard Johnson case concerned the restaurant facilities constructed on land owned by the Maine Turnpike Authority (hereinafter "Authority") adjacent to the northbound and southbound roadway lanes, respectively, at Mile 24 of the Maine Turnpike, this case involves the two gasoline station facilities thereon constructed.

The following facts have been stipulated.

On April 28, 1971 the Authority entered into a lease with Humble Oil & Refining Company (now Exxon Corporation) of the gas station facilities under which Exxon was to operate the service stations for profit in accordance with particular conditions imposed by the Authority designed to ensure adequate service to patrons of the Turnpike. The term of the lease was from December 14, 1972 to December 13, 1983 unless sooner terminated by the Authority on December 13, 1977. Exxon, as lessee, was required to pay all taxes on any and all property owned, or business conducted, by it. At all times here material Exxon has operated the two service stations at Mile 24 pursuant to the lease.

As of April 1, 1973 Kennebunk officials valued the land and buildings comprising the two gas station facilities at $199,840 and assessed thereon a tax in the amount of $5,395.68 in accordance with Kennebunk's 1973 tax rate of $27 per $1,000 valuation. Kennebunk billed that amount to Exxon under the heading "real estate taxes." On October 29, 1973 Exxon paid the tax "under protest."

Thereafter, on March 30, 1974 Exxon applied to the Kennebunk Tax Assessor for an abatement of the entirety of the tax it had paid "under protest." When the ap-

plication was denied, Exxon appealed to the Superior Court pursuant to 36 M.R.S.A. § 845.

The complaint of Exxon Corporation, under date of May 1, 1971, named as defendants: George W. King, Sr. in his capacity as Tax Assessor for the Town of Kennebunk, Kenneth W. Barrett as Tax Collector of the Town of Kennebunk, and the Inhabitants of the Town of Kennebunk. In various allegations Exxon asserted essentially two contentions: (1) as purportedly assessed on the fee simple interest of the Authority in the realty in question, the tax is invalid as a tax on a real property interest exempt from taxation; (2) alternatively, as purportedly assessed on the leasehold interest of Exxon in realty owned by the Authority, the tax is either nugatory as being on an interest in realty exempt from taxation or, in any event, the amount of tax is invalid as an over-assessment.

The Authority moved to be joined as a party plaintiff pursuant to Rule 20(a) M.R.C.P. The motion was granted by the presiding Justice on August 20, 1974, and thereupon the Authority became a plaintiff in the action.

Exxon amended its complaint, as of December 13, 1974, to seek a declaratory judgment upholding its above-described claims as well as an order commanding defendant King to abate the tax assessed and defendants Barrett and the Inhabitants of the Town of Kennebunk to refund the amount paid.[1]

After defendants filed an answer denying the material allegations made by Exxon, the case was reported to this Court with the question of valuation reserved for decision in the Superior Court should this Court uphold the validity of Kennebunk's undertaking to tax.

■ We conclude that in the circumstances of this case Exxon's payment of the tax, notwithstanding that it was "under protest", requires that the Report be discharged.

Recently, in *Berry v. Daigle,* Me., 322 A.2d 320 (1974) we reiterated and applied our longstanding rule that the fact alone that payment of a tax is made "under protest" does not establish the duress legally requisite to render the payment involuntary, thus to permit recovery of the amount of tax paid should the assessment of the tax be held illegal. Other independent circumstances constituting such duress must appear.

■ In *Berry v. Daigle* we held that the automatic loss of a driver's license for failure to remit a poll tax[2] did not constitute such hardship as to render the payment of the tax "under protest" a payment under "duress" and, therefore, involuntary. *Berry v. Daigle* reaffirmed the principle of our prior decisions that, in the context of taxation, duress arises only in those situations in which taxes are paid to avoid arrest or outright seizure of personal property—in short, when failure to pay produces irreparable injury. *Smith v. Readfield,* 27 Me. 145 (1847); *Rogers v. Inhabitants of Greenbush,* 58 Me. 390, 393 (1870).

Here, no such irreparable injury faced Exxon for failure to pay the tax assessed by Kennebunk.

Had Exxon refused to pay, the Town of Kennebunk could have resorted to the alternative remedies of 36 M.R.S.A. §§ 941, 942 and 943,[3] by virtue of which a lien at-

---

1. By stipulation docketed in this Court on May 23, 1975 Exxon's action as against Tax Collector Barrett was dismissed.

2. The poll tax statute, 36 M.R.S.A. § 1381, was repealed effective March 13, 1973.

3. We consider of no consequence, here, other remedies to enforce collection of real estate taxes which were applicable as well, to enforce payment of the poll tax involved in *Berry v. Daigle,* supra,—such as imposition of interest (§ 505), distraint of personal property (§ 991) and arrest (§ 993). Nothing in the instant record reveals an actual threat of their use, and *Berry v. Daigle* contains no intimation that their mere availability would be sufficient to constitute duress.

taches to real property of a delinquent real estate taxpayer pursuant to 36 M.R.S.A. § 552.[4] In the proceedings to enforce the lien, in accordance with Section 941, Exxon could have raised the alleged invalidity of the tax and lien. The "costs" and "interest" risks under Section 849 and Section 941 would not constitute a special hardship rising to the level of duress since they were not sufficiently more severe (if more severe at all) than the risks usually involved in civil actions.

Should Kennebunk have seen fit (as it did in the companion Howard Johnson case) to perfect its lien under Section 942, so that Exxon's interests in the subject premises would be strictly foreclosed after 18 months under Section 943, Exxon, without paying the tax, would still have had adequate remedies available to it. Although Section 943 operates automatically and cannot be tolled by judicial action—other than indirectly through an injunction to town officials operating in personam and ordering them to waive operation of Section 943 under the provisions of Section 944, *Inhabitants of the Town of Lincolnville v. Perry,* 150 Me. 113, 118, 104 A.2d 884, 888 (1954),—the non-paying taxpayer may attack the validity of the lien vesting title in the taxing authority *after* the expiration of 18 months and obtain a judicial nullification of it, *Arsenault v. Inhabitants of Roxbury,* Me., 275 A.2d 598 (1971). See also: *Martel v. Bearce,* Me., 311 A.2d 540, 543 (1973).

Confirming this conclusion that Exxon paid the tax without being subject to duress is the decision in *Rogers v. Inhabitants of Greenbush,* 58 Me. 390 (1870).

There, a taxpayer protesting the assessment of real estate taxes as illegally made paid the disputed amount in order to redeem land sold for the taxes. He was not arrested, and there was no seizure of his goods. Holding that the circumstances surrounding the redemption payment did not present a case of duress, this Court said:

> "The plaintiff . . . had an opportunity to test the validity of the tax and of the proceedings, by commencing or defending any real action depending upon the validity of the sale. He was not remediless. He was not under duress or threats. He paid voluntarily, so far as any actual danger of loss of personal property or of liberty was concerned. He had a door opened for him into court, where he could defend his title to the land, if the tax or proceedings were illegal and insufficient to pass the title." (p. 394)

This language applies with equal force to the instant taxpayer, Exxon.

Since Exxon has failed to demonstrate such duress as would entitle it to a refund of the 1973 taxes paid by it, nothing constituting a live case or controversy remains for decision in this case. Independently of its claim for refund, Exxon's complaint asks a declaratory judgment *only* as to the validity of the tax assessment for the year 1973 which Exxon paid. Nothing was alleged in the complaint, or established in the Agreed Statement of Facts, concerning real estate tax assessments involving Exxon likely, or threatened, to be undertaken by Kennebunk in the future.[5]

4. 36 M.R.S.A. § 552, reads:
   "§ 552.—*Tax lien*
   "There shall be a lien to secure the payment of all taxes legally assessed on real estate as defined in section 551, provided in the inventory and valuation upon which the assessment is made there shall be a description of the real estate taxed sufficiently accurate to identify it. Such lien shall take precedence over all other claims on said real estate and shall continue in force until the taxes are paid or until said lien is otherwise terminated by law."

5. Our decision of this date in the companion Howard Johnson case has settled the illegality

The entry is:

*Report discharged.*

All Justices concurring.

of Kennebunk's undertaking to subject the private restaurant lessee of the Authority to liability for payment of a tax assessed upon the fee simple interest of the Authority in the real estate thus leased. We may note that were we authorized to reach the merits of that question as it is raised in the instant Report relative to Exxon as lessee of the gasoline filling station operations, the Howard Johnson decision would be precedentially controlling.

Although the brief of defendants in this case (as also in the Howard Johnson case) has suggested that future taxing efforts of Kennebunk will be directed to the leasehold interest of Exxon (and of Howard Johnson) rather than the fee simple interest of the Authority, determination of the legality of such approach by Kennebunk must await an actual case in which Kennebunk has in fact made such tax assessment on a leasehold interest.