**PRIVATE TRUCK COUNCIL OF AMERICA, INC. et al.**

v.

**SECRETARY OF STATE.**

Supreme Judicial Court of Maine.

Argued Nov. 20, 1985.

Decided Jan. 3, 1986.

Billig, Sher & Jones, P.C., Jacob P. Billig (orally), Richard A. Allen, David F. Smith, Washington, D.C., Murray, Plumb & Murray, Thomas C. Newman, John C. Lightbody, Portland, for plaintiff.

James E. Tierney, Atty. Gen., Robert S. Frank (orally), Asst. Atty. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN and SCOLNIK, JJ.

McKUSICK, Chief Justice.

In this class action brought by and on behalf of certain out-of-state truckers, the Superior Court (Kennebec County) agreed with the plaintiff class that Maine's so-called reciprocal truck taxes violate the Commerce Clause of the United States Constitution. The court, however, refused to order any refund of amounts paid on those unconstitutional taxes, except to the extent that the plaintiff class had been protected by an escrow arrangement set up during the pendency of this action, and also denied plaintiffs' request for allowance of attor-

ney fees. Both parties have appealed. Our review reveals no reversible error in any of those rulings.

The statute in question, 29 M.R.S.A. § 2243–C,[1] went into effect on April 24, 1984. P.L. 1983, ch. 818, § 21. Section 2243–C imposes taxes or fees on all trucks coming into Maine that are registered in states that levy so-called third structure taxes[2] on Maine-registered trucks operated in those states. On November 11, 1984, under the authority of section 2243–C, the Secretary of State and the Commissioner of Transportation, promulgated "Joint Rules Governing Collection of Reciprocal Taxation of Motor Vehicles." Those rules named 13 states whose registered vehicles on traveling into Maine become subject to tax under section 2243–C.[3] The actual tax or fee assessed under section 2243–C is determined on a state-by-state basis and is designed to mirror exactly the third structure tax that each of the 13 states would assess on a Maine-registered truck traveling within its jurisdiction. For example, since Nevada assesses a flat $20 trip fee on each Maine-registered truck that enters its jurisdiction, section 2243–C authorizes a

---

**1.** 29 M.R.S.A. § 2243–C (Supp.1985–1986) reads in full:

So long as another jurisdiction imposes a tax or fee on a class of motor vehicles registered in Maine and traveling in that jurisdiction and that tax or fee is additional to those imposed by Maine upon the same class of motor vehicles not registered in that jurisdiction, the Secretary of State, Commissioner of Finance and Administration and Commissioner of Transportation acting together shall levy the same or substantially the same tax or fee upon the same class of motor vehicles registered in that jurisdiction and traveling in Maine.

The Secretary of State, Commissioner of Finance and Administration and Commissioner of Transportation shall jointly promulgate rules for collection of taxes or fees due pursuant to this section, for enforcement of the collection and for otherwise carrying out the purposes of this section. The Secretary of State shall monitor taxes and fees assessed against Maine-registered motor vehicles by other jurisdictions, in order to ensure comparable treatment of foreign-registered motor vehicles traveling in Maine.

Any revenue derived from taxes or fees levied pursuant to this section shall accrue to the Highway Fund.

Any person who fails to pay a tax or fee due pursuant to this section shall be guilty of a Class E crime.

**2.** Third structure taxes are so named because they are assessed in addition to registration fees and fuel taxes.

**3.** Those 13 states are Arkansas, Colorado, Idaho, Kentucky, Mississippi, Nevada, New York, New Mexico, Pennsylvania, Ohio, Oregon, Virginia, and Wyoming. By way of examples, their third structure taxes imposed on out-of-state trucks include a $.002 per mile vehicle charge and a $.0008 per mile cargo charge (Colorado); a $.0305–.04490 per ton per mile charge (Idaho); a tax calculated as the amount of fuel used $x$ price of fuel $x$ sales tax rate (Mississippi); a flat $20 per trip fee (Nevada); a $36 per axle charge (Pennsylvania); and a $.02 per gallon charge (Virginia). Alternatively, some of these 13 states charge out-of-state trucks a per trip fee ranging up to $40.

$20 trip fee on each Nevada truck that enters Maine. Failure to pay the tax or fee imposed under section 2243–C is a Class E crime.

Plaintiffs Private Truck Council of America, Inc., and two out-of-state motor carriers brought the present action seeking declaratory and injunctive relief against enforcement of section 2243–C and refunds of all amounts paid under that section.[4] They named as defendants the Secretary of State and other officials of the State of Maine charged with enforcing the reciprocal truck taxes. For convenience, we will refer to defendants collectively as the State. On January 2, 1985, with the State's consent, the Superior Court ordered the State to place in escrow all moneys thereafter collected under the disputed statute. On June 17, 1985, the Superior Court entered a summary judgment declaring that section 2243–C violated the Commerce Clause of the United States Constitution[5] and therefore was unenforceable. The court, however, denied plaintiffs a refund of any back taxes paid, other than those deposited in the court-ordered escrow fund. Plaintiffs appeal the Superior Court's limitation of the tax refund and its denial of attorney fees. The State cross-appeals, challenging the court's finding of unconstitutionality of the reciprocal truck taxes.

### I. *Constitutionality of the "Reciprocal Truck Taxes"*

Under the Commerce Clause a state tax on interstate commerce will pass muster only if the tax "[1] is applied to an activity with a substantial nexus with the taxing State, [2] is fairly apportioned, [3] does not discriminate against interstate commerce,

and [4] is fairly related to the services provided by the State." *American Trucking Associations, Inc. v. Quinn*, 437 A.2d 623, 625–26 (Me.1981) (quoting *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326 (1977)); *see also Maryland v. Louisiana*, 451 U.S. 725, 754, 101 S.Ct. 2114, 2133, 68 L.Ed.2d 576 (1981). The Superior Court found that section 2243–C failed to pass the third aspect of this test because on its face it discriminates against interstate commerce.

■ To determine whether section 2243–C passes the third prong of the *Complete Auto Transit* test, we must assess it "in light of its actual effect considered in conjunction with other provisions of the State's tax scheme," and we must decide whether section 2243–C "will in its practical operation work discrimination against interstate commerce." *Maryland v. Louisiana*, 451 U.S. at 756, 101 S.Ct. at 2134. A statute's discriminatory effect on interstate commerce may be offset by complementary or offsetting taxes on domestic commerce. *American Trucking*, 437 A.2d at 626–27. In the present case, section 2243–C on its face discriminates against interstate commerce because it levies on certain foreign-registered trucks taxes that Maine does not assess against Maine-registered trucks. Since we are not referred to any statute by which Maine imposes a complementary or compensating tax on its domestic trucks to offset the inherently discriminatory effect of section 2243–C,[6] the reciprocal truck taxes must be struck down as a violation of the Commerce Clause of the United States Constitution. We read the decisions of the Supreme

---

**4.** On June 17, 1985, the Superior Court certified this suit as a class action pursuant to M.R.Civ.P. 23(b)(1)(B) and 23(b)(2). The plaintiff class was defined as "all persons or legal entities subject to the tax denominated as a 'reciprocal tax' assessed pursuant to the provisions of 29 M.R.S.A. § 2243–C."

**5.** U.S. Const. art. I, § 8, cl. 3. The Commerce Clause empowers Congress to "regulate Com-

merce with foreign Nations, and among the several States, and with the Indian Tribes...."

**6.** Section 2243–C authorizes such an assortment of taxes, varied in nature and amount, that it appears dubious that any one tax imposed on domestic trucks could be tailored to offset every one of the reciprocal taxes imposed upon trucks registered in the 13 states (identified in note 3) that travel in Maine.

Court of the United States[7] to require nothing less, if our nation is to avoid " 'a multiplication of preferential trade areas destructive' of the free trade which the Clause protects." *Boston Stock Exchange v. State Tax Commission,* 429 U.S. 318, 329, 97 S.Ct. 599, 606, 50 L.Ed.2d 514 (1977) (quoting *Dean Milk Co. v. Madison,* 340 U.S. 349, 356, 71 S.Ct. 295, 298, 95 L.Ed. 329 (1951)).

■ The State urges that section 2243–C does not violate the Commerce Clause because the Maine Legislature had no discriminatory purpose in its enactment, but rather intended *to promote interstate commerce* by attempting "to make treatment of [foreign-registered] motor vehicles in Maine comparable with treatment of similar Maine-registered motor vehicles traveling in those [foreign] vehicles' jurisdictions of registration." L.D. 2412 Statement of Fact (111th Legis.1984). In other words, section 2243–C had as its candid purpose coercive retaliation to force the 13 "offending" states to drop the extra tax burdens they impose on Maine trucks. This type of legislative purpose has not, however, met with approval before the United States Supreme Court. To the extent, if any, that the 13 states whose vehicles are currently subject to Maine's reciprocal truck tax are themselves unconstitutionally burdening interstate commerce with their third structure taxes, "the Commerce Clause itself creates the necessary reciprocity: [Maine and its truckers] may pursue their constitu-

tional remedy by suit in state or federal court challenging [those 13 states'] actions as violative of the Commerce Clause," instead of enacting retaliatory taxes. *Great Atlantic & Pacific Tea Co. v. Cottrell,* 424 U.S. 366, 380, 96 S.Ct. 923, 932, 47 L.Ed.2d 55 (1976). A state may not violate the Commerce Clause in an attempt through self-help to coerce another state into desisting from a Commerce Clause violation.

■ There also is no merit in the State's argument that section 2243–C is valid since it discriminates against only some, not all, foreign-registered trucks, i.e., only those trucks registered in those 13 jurisdictions imposing third structure taxes on Maine-registered vehicles that may go into those states. The Supreme Court rejected such an argument in *Lewis v. B T Investment Managers, Inc.,* 447 U.S. 27, 100 S.Ct. 2009, 64 L.Ed.2d 702 (1980), when it struck down a Florida statute as violative of the Commerce Clause even though the statute discriminated against only certain types of out-of-state financial institutions. *Id.* at 40–43, 100 S.Ct. at 2017–19. Nothing in the present case suggests a different analysis. Balkanization, even though only partial, is still Balkanization.

■ Because section 2243–C is discriminatory on its face and the State's scheme for taxing trucks lacks any complementary or offsetting taxes on domestic truckers, the statute must fall as offensive to the Commerce Clause. The Superior Court found no need to reach the alternative grounds upon which plaintiffs argue that

---

**7.** The 1972 decision of a New Jersey trial court upholding a retaliatory truck tax is not persuasive to the contrary, even though an appeal to the United States Supreme Court was dismissed summarily. *B & L Motor Freight, Inc. v. Heymann,* 120 N.J.Super. 270, 293 A.2d 711 (Ct. Ch.Div.1972), *aff'd without opinion,* 125 N.J.Super. 372, 311 A.2d 184 (Ct.App.Div.1973), *certif. denied,* 64 N.J. 494, 317 A.2d 707 (1974), *appeal dismissed,* 419 U.S. 1042, 95 S.Ct. 613, 42 L.Ed.2d 636 (1974). Summary dispositions by the Supreme Court "do not ... have the same precedential value ... as does an opinion of [the Supreme] Court after briefing and oral argument." *Washington v. Yakima Indian Nation,* 439 U.S. 463, 476 n. 20, 99 S.Ct. 740, 749 n. 20, 58 L.Ed.2d 740 (1979). The

Supreme Court's summary action may mean nothing more than that the one opinion rendered in the New Jersey state court system did not refine the issues with the clarity, precision, and certainty desirable before the highest court undertakes review. *See Rescue Army v. Municipal Court,* 331 U.S. 549, 576, 67 S.Ct. 1409, 1423, 91 L.Ed. 1666 (1947). In any event, any significance accorded the Supreme Court's 1974 summary disposition of *B & L Motor Freight* must yield to supervening "doctrinal developments." *See Hicks v. Miranda,* 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975). The case at bar is controlled by more recent Supreme Court cases, including those cited in the text of this opinion.

the taxes imposed by section 2243–C are unconstitutional, and neither do we.

## II. *Plaintiffs' Claim for Refund of All Taxes Paid under the Unconstitutional Statute.*

Having succeeded in getting the reciprocal truck taxes declared unconstitutional, plaintiffs assert that they are entitled to a refund of *all* moneys paid to the State on those unconstitutional taxes, including those paid prior to the establishment of the court-ordered escrow account on January 2, 1985. The Superior Court, however, limited their relief to reimbursement of the funds in the escrow account. We agree with the Superior Court's rejection of plaintiffs' claim to any refund of the pre-escrow payments.

■ Plaintiffs first rely on Maine common law to support their claim for a full refund. Recognizing at least for the purposes of the present case that under Maine common law they are entitled to a refund of previously paid taxes only if they paid them under duress, *see Berry v. Daigle,* 322 A.2d 320, 326 (Me.1974), plaintiffs contend that the facts here satisfy that duress requirement. They urge that the mere fact that failure to pay the reciprocal truck tax constitutes a Class E crime is enough to invoke the "implied duress" doctrine. *See Atchison, T. & S.F. Ry. v. O'Connor,* 223 U.S. 280, 286, 32 S.Ct. 216, 217, 56 L.Ed. 436 (1912). Maine, however, has never adopted that doctrine, although it was noted in *Berry,* 322 A.2d at 326 n. 4. In Maine, without a refund statute, "in the context of taxation, duress arises only in those situations in which taxes are paid to avoid arrest or outright seizure of personal property—in short, when failure to pay produces irreparable injury." *Exxon Corp. v. King,* 351 A.2d 534, 536 (Me.1976). The record contains no evidence of any arrests made or threatened, or of any actual or threatened seizure of property, because a trucker refused to pay the section 2243–C tax. Therefore, the Superior Court correctly found that the common law of

Maine affords no remedy to plaintiffs other than a return of those funds paid into the escrow account on and after January 2, 1985.

■ Second, plaintiffs urge that federal constitutional law requires that the State disgorge all back taxes paid pursuant to the unconstitutional section 2243–C. To support their theory they cite *Carpenter v. Shaw,* 280 U.S. 363, 369, 50 S.Ct. 121, 123, 74 L.Ed. 478 (1930), and *Ward v. Board of County Commissioners,* 253 U.S. 17, 24, 40 S.Ct. 419, 422, 64 L.Ed. 751 (1920), for the proposition that the fourteenth amendment requires a refund of any unconstitutional tax. Those cases, however, required refund of taxes paid *under compulsion.* Since we have already found that plaintiffs did not pay the section 2243–C taxes under duress or compulsion, those cases do not aid plaintiffs' position.

■ Having failed on both their common law and federal constitutional arguments, plaintiffs fall back on a contention that they are entitled to a refund under 36 M.R.S.A. § 152, which in terms relieves the taxpayer from the adverse consequences of paying "any tax":

> A *taxpayer* may pay any *tax,* ... without forfeiting any right to apply for a refund or an abatement or to seek review of the validity of the tax. No such *tax* ... need be paid ... under protest or under duress to entitle the *taxpayer* to apply for a refund or an abatement or to seek review of the validity of the tax.

36 M.R.S.A. § 152 (Supp.1985–1986) (emphasis added). Analysis of the statutory context of section 152, however, reveals that the truckers who have paid the reciprocal truck tax imposed by 29 M.R.S.A. § 2243–C are not given the benefit of the refund statute.

Section 152, originally enacted as section 6 of title 36 by P.L. 1977, ch. 477, § 1, was reenacted with its present numerical designation by P.L. 1981, ch. 364, § 10, in connection with extensive administrative changes in the tax laws. In the same

comprehensive 1981 enactment, *id.* §§ 5, 6, the legislature also prescribed the following definitions of the words "tax" and "taxpayer" as used in title 36:

As used in this Title, unless the context otherwise indicates, the following terms have the following meanings.

. . . .

5. Tax. "Tax" means the total amount required to be paid, withheld and paid over, or collected and paid over with respect to estimated or actual tax liability under *this Title,* including any interest or civil penalty relating thereto.

. . . .

7. Taxpayer. "Taxpayer" means any person required to file a return under *this Title* or to pay, withhold and pay over or collect and pay over any tax imposed by *this Title.*

36 M.R.S.A. § 111 (Supp. 1985–1986) (emphasis added).

Plaintiffs urge us to ignore the limiting definitions of "tax" and "taxpayer," and to interpret the words "any tax" in 36 M.R.S.A. § 152 exactly as they would be read if they stood all by themselves. That we cannot do. Section 2243–C did not become effective until April 24, 1984. At that time, as well as at the time plaintiffs paid the taxes due under section 2243–C, the 1981 definitional amendments to title 36 were already in place and therefore plaintiffs were not "taxpayers" paying a "tax" for any purpose of title 36, including 36 M.R.S.A. § 152. The reciprocal truck taxes are not imposed under title 36, but rather under title 29. Thus plaintiffs may not use section 152 as a mechanism for obtaining a refund free of the common law requirement that they demonstrate that they paid the taxes under duress.[8] "In construing a statute our duty is to give effect to the intent of the Legislature as evidenced by the language of the statute. If the meaning of the language is plain, we must interpret the statute to mean exactly what it says." *Concord General Mutual Insurance Co. v. Patrons-Oxford Mutual Insurance Co.,* 411 A.2d 1017, 1020 (Me.1980). *See also Opinion of the Justices,* 460 A.2d 1341, 1345 (Me.1982); *National Council on Compensation Insurance v. Superintendent of Insurance,* 481 A.2d 775, 779 (Me.1984). The language used by the legislature plainly limited the relaxation of the common law refund requirements to taxes imposed under title 36. Because 29 M.R.S.A. § 2243–C does not impose a tax under title 36, plaintiffs do not have a statutory right to recover the taxes they paid thereunder. The Superior Court was correct in ordering a refund of only the moneys held in the escrow account.

III. *Plaintiffs' Claim for Attorney Fees under Section 1988*

Plaintiffs also contend that they are entitled to recover attorney fees from the State pursuant to 42 U.S.C. § 1988, because they brought their action alternatively under 42 U.S.C. § 1983. Section 1988 in the Civil Rights Act provides for the allowance of reasonable attorney fees as part of the costs "[i]n any action or proceeding to enforce a provision of [section 1983]." 42 U.S.C.A. § 1988 (1981). Section 1983 provides in pertinent part:

Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

---

**8.** *Plaintiffs also contend that they are entitled to receive a refund of taxes paid pursuant to section 2243–C's predecessor statute, 29 M.R.S.A. § 2243(2). Like current section 2243–C, former section 2243(2) authorized reciprocal truck taxes. Plaintiffs, however, are defeated by the same reasoning as applies to section 2243–C,* namely, the section 2243(2) taxes did not go into effect until April 1, 1983, P.L. 1983, ch. 94, pt. C, § 9, and were repealed effective April 24, 1984, P.L. 1983, ch. 818, § 20, and at all times during their existence the definitions applicable to title 36 limited the scope of a section 152 refund to taxes assessed under title 36.

42 U.S.C.A. § 1983 (1981). Plaintiffs contend that their class action, which resulted in the judicial declaration that the reciprocal truck taxes violate the Commerce Clause of the United States Constitution, vindicated one of the "rights, privileges or immunities secured by the Constitution" that section 1983 was intended to protect. Therefore, they say, they are entitled to recover their attorney fees under section 1988.[9]

■ Relying on *Thiboutot v. State*, 405 A.2d 230, 237 (Me.1979), the Superior Court ruled that plaintiffs' section 1983 claim, as well as their dependent section 1988 claim for attorney fees from the State, was barred by sovereign immunity, there being no evidence of bad faith on the part of defendants in implementing the reciprocal truck tax statute. We need not consider the correctness of that ruling because plaintiffs failed in any event to state a claim for relief cognizable under section 1983. We are convinced that the Congress never intended to make a violation of the Commerce Clause actionable under that section of the Civil Rights Act. The Eighth Circuit has so held in a well-reasoned opinion in *Consolidated Freightways Corp. v. Kassel*, 730 F.2d 1139 (8th Cir.), *cert. denied*, — U.S. ——, 105 S.Ct. 126, 83 L.Ed.2d 68 (1984). Although the United States Supreme Court has not addressed this issue so far as the Commerce Clause is concerned, it did hold in *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), that the Supremacy Clause does not give rise to a claim of right "secured by the Constitution" within the meaning of 28 U.S.C. § 1343(3), a jurisdictional counterpart to section 1983. *Id.* at 615, 99 S.Ct. at 1914. *See also Gould, Inc. v. Wisconsin Department of Industry, Labor and Human Relations*, 750 F.2d 608, 616 (7th Cir. 1984) (Supremacy Clause violation does not present a cognizable claim under section

1983). The Eighth Circuit, drawing on the rationale of the Supreme Court's decision in *Chapman*, stated:

> Although the Commerce Clause differs from the Supremacy Clause in that the Commerce Clause is a specific grant of legislative power to Congress, the two clauses are analogous in the sense that both clauses limit the power of a state to interfere with areas of national concern. Just as the Supremacy Clause does not secure rights within the meaning of § 1983, neither does the Commerce Clause.

*Consolidated Freightways*, 730 F.2d at 1144 (footnotes omitted). We adopt as our own the reasoning of the Eighth Circuit's opinion in *Consolidated Freightways*:

> It is clear from the language employed by the Supreme Court in Commerce Clause cases that the Commerce Clause deals with the relationship between national and state interests, not the protection of individual rights. These decisions are replete with references to the *national* or *federal interest* in preventing the burdensome state regulation of interstate commerce. *See, e.g., Bibb v. Navajo Freight Lines*, 359 U.S. 520, 524, 79 S.Ct. 962, 965, 3 L.Ed.2d 1003 (1959); *Hood & Sons, Inc. v. DuMond*, 336 U.S. 525, 537–42, 69 S.Ct. 657, 664–67, 93 L.Ed. 865 (1949); *Southern Pacific Co. v. Arizona*, 325 U.S. 761, 775–76, 65 S.Ct. 1515, 1523–24, 89 L.Ed. 1915 (1945).

> . . . .

> Although individuals are oftentimes benefited through the indirect protection resulting from the limitations placed on the states through the dormant Commerce Clause doctrine, such benefit is not the same thing as a "right" secured by the Constitution within the meaning of § 1983. . . .

> . . . .

---

**9.** We assume that plaintiffs are entitled to attorney fees under section 1988 if section 1983 would have been an appropriate basis for relief, even though relief was in fact granted otherwise than under section 1983. *See Maher v. Gagne*, 448 U.S. 122, 132 n. 15, 100 S.Ct. 2570, 2576 n. 15, 65 L.Ed.2d 653 (1980).

... To hold that an alleged violation of the Commerce Clause constitutes an action cognizable under § 1983 would ... be an unwarranted extension of the Civil Rights Act. We do not believe that such a cause of action was within the intent of the Congress that enacted the civil rights statutes, nor do we believe that such an interpretation of the scope of § 1983 is mandated by either the language of § 1983 or the nature of the Commerce Clause.

*Id.* at 1144–47 (emphasis in original) (footnotes omitted).

We find unpersuasive, as did the Eighth Circuit, two earlier federal cases stating terse holdings going the other way. *Kennecott Corp. v. Smith,* 637 F.2d 181, 186 n. 5 (3d Cir.1980); *Confederated Salish and Kootenai Tribes v. Moe,* 392 F.Supp. 1297, 1304–05, (D.Mont.1975), *aff'd,* 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976).[10] Neither of those cases analyzed the merits of extending section 1983 to encompass violations of the Commerce Clause, but rather merely relied on generalized statements in Supreme Court cases that did not involve the Commerce Clause issue. *Consolidated Freightways,* 730 F.2d at 1142–43.

■ The complaint in this class action sought relief directly on the basis that section 2243–C was void because it violated the Commerce Clause; the plaintiff class has prevailed on that claim. In another count, the complaint attempted to state a claim under section 1983 to the effect that "[t]he actions of defendants [in imposing taxes violative of the Commerce Clause] ... deprive plaintiffs of rights secured to them by the United States Constitution." That latter count, however, did not state a cognizable cause of action under section 1983. Consequently, section 1988 never came into play, and the plaintiff class is left with no basis for departing from the American rule that they bear their own attorney fees in the litigation. They cannot recover attorney fees from the State.

The entry is:

Judgment affirmed.

All concurring.

---

**10.** The Supreme Court in its affirmance did not reach the issue.