524 So.2d 1000 (1988)
DIVISION OF ALCOHOLIC BEVERAGES AND TOBACCO, DEPARTMENT OF BUSINESS REGULATION, and Office of the Comptroller, State of Florida, et al., Appellants/Cross-Appellees,
v.
McKESSON CORPORATION, et al., Appellees/Cross-Appellants.
No. 70368.
Supreme Court of Florida.
February 18, 1988.
Rehearing Denied May 2, 1988.
*1001 Robert A. Butterworth, Atty. Gen. and Daniel C. Brown, Asst. Atty. Gen., Tax Section, Tallahassee, for the Div. of Alcoholic Beverages and Tobacco, Dept. of Business Regulation.
John K. Aurell and Ricky L. Polston of Aurell, Fons, Radey & Hinkle, Tallahassee, and Howell Ferguson, Tallahassee, for Jacquin-Florida Distilling Co., Inc.
Bruce Rogow, Fort Lauderdale, and M. Stephen Turner, Tallahassee, for Todhunter Intern., Inc.
David G. Robertson and Neil S. Berinhout of Morrison & Foerster, San Francisco, Cal., and Chris W. Altenbernd and Charles A. Wachter of Fowler, White, Gillen, Boggs, Villareal and Banker, P.A., Tampa, for McKesson Corp.
Harold F.X. Purnell of Oertel & Hoffman, P.A., Tallahassee, for Tampa Crown Distributors, Inc. and Florida Beverage Corp.
Barry R. Davidson and Cheryl A. Bell of Steel, Hector & Davis, Miami, for Brown-Forman Corp.
EHRLICH, Justice.
On June 29, 1984, the United States Supreme Court decided the case of Bacchus Imports Ltd. v. Dias, 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984). In Bacchus, the Court struck down a Hawaii alcoholic beverage excise tax which exempted okolehao, a brandy distilled from the root *1002 of an indigenous shrub of Hawaii, and fruit wine manufactured in the state as being violative of the Commerce Clause, concluding that the exemption had both the purpose and effect of discriminating in favor of locally produced products. At the time of the Bacchus decision, sections 564.06 and 565.12, Florida Statutes (Supp. 1984), granted tax preferred treatment to alcoholic beverages made from certain base agricultural crops grown in Florida and manufactured and bottled in Florida. In response to the Bacchus decision, the Florida Legislature amended sections 564.06 and 565.12 in Chapters 85-203 and 85-204, Laws of Florida. The amended provisions, as codified in sections 564.06 and 565.12 Florida Statutes (1985), among other things, grant exemptions or tax preferences to wines and distilled spirits manufactured from citrus, sugar cane and certain grape species, all of which will grow in Florida, or from by-products or concentrates thereof, no matter where the point of manufacture and disallow the tax preference to eligible alcoholic beverages under certain circumstances.
Three separate complaints were filed against the Division of Alcoholic Beverages and Tobacco (DABT) challenging the revised tax preference scheme: one by Tampa Crown Distributors, Inc. and Florida Beverage Corporation, licensed wholesale distributors of alcoholic beverages in Florida, one by McKesson Corporation, also a licensed wholesale distributor and the third by Brown-Forman Corporation, a manufacturer of wine coolers in California who sells its products to wholesalers in Florida for resale in the state. Tampa Crown, Florida Beverage and McKesson challenge the preference and disqualification provisions of both sections 564.06 and 565.12. Brown-Forman challenges only those of section 564.06. The primary claim in all three complaints was that the preference and disqualification provisions under the new tax scheme discriminated in favor of local commerce and against interstate commerce contrary to the mandates of Bacchus.
Jacquin-Florida Distilling and Todhunter International, manufacturers who benefit from the challenged preference scheme, intervened as defendants. The DABT raised a number of defenses to each complaint, including a claim that each plaintiff lacked standing to challenge the provisions in question. Tampa Crown/Florida Beverage and Brown-Forman filed motions for summary judgment and supporting affidavits. McKesson filed a motion for partial summary judgment and preliminary injunction. The trial court entered final summary judgments in favor of Tampa Crown/Florida Beverage and Brown-Forman and entered a partial summary judgment and preliminary injunction in favor of McKesson. In all three judgments, the trial judge found:
These amendments were an effort by the legislature to overcome the constitutional problems in the Florida Alcoholic Beverages laws resulting from the Bacchus decision. This Court, having reviewed the challenged amendments finds, however, that this legislation failed to surmount the constitutional violations addressed in Bacchus.

The rulings were prospective in nature.
The DABT appealed those portions of the judgements finding the tax preference scheme unconstitutional. McKesson and Tampa Crown filed cross-appeals challenging the prospective nature of the rulings and the denial of their claims for a refund. The District Court consolidated the cases and certified the cause to this Court as involving a question of great public importance requiring immediate resolution. We have jurisdiction, article V, section 3(b)(5), Florida Constitution, and affirm.
First we address the DABT's claim that the appellees lack standing to challenge the "disqualification provisions" because none of them have "alleged or proved any harm to their business flowing from those provisions." Each of the appellees claims that the overall tax preference scheme for alcoholic beverages, which is made up of both the exemption provisions and the disqualification provision of sections 564.06 and 565.12, discriminates against interstate commerce and thus, has an adverse competitive impact on their *1003 businesses. It is clear, under the Bacchus decision, that, as wholesale distributors and manufacturers of alcoholic beverages who are liable for taxes under Florida's alcoholic beverage tax scheme, the appellees have standing to litigate whether the allegedly discriminatory scheme has had an adverse competitive impact on their businesses. 104 S.Ct. at 3053; see also Eastern Air Lines, Inc. v. Department of Revenue, 455 So.2d 311, 317 (Fla. 1984). Further, we agree that the appellees clearly have standing to assert their constitutional right to engage in interstate commerce free of burdens violative of the commerce clause. See Boston Stock Exchange v. State Tax Commission, 429 U.S. 318, 320 n. 3, 97 S.Ct. 599, 602 n. 3, 50 L.Ed.2d 514 (1977); Mapco Inc. v. Grunder, 470 F. Supp. 401, 405 (N.D.Ohio 1979).

COMMERCE CLAUSE
We next address the merits of the appellees' challenge under the Commerce Clause of the United States Constitution. The United States Supreme Court employs a two-tiered approach to analyzing state economic regulation under the Commerce Clause. Brown-Forman Distillers Corp. v. New York State Liquor Authority, 476 U.S. 573, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986). This approach was recently explained by the Court in Brown-Forman as follows:
When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry. See, e.g., Philadelphia v. New Jersey, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978); Shafer v. Farmers Grain Co., 268 U.S. 189, 45 S.Ct. 481, 69 L.Ed. 909 (1925); Edgar v. MITE Corp., 457 U.S. 624, 640-43, 102 S.Ct. 2629, 2639-41, 73 L.Ed.2d 269 (1982) (plurality opinion). When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, we have examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits. Pike v. Bruce Church, Inc., 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). We have also recognized that there is no clear line separating the category of state regulation that is virtually per se invalid under the Commerce Clause, and the category subject to the Pike v. Bruce Church balancing approach. In either situation the critical consideration is the overall effect of the statute on both local and interstate activity. See Raymond Motor Transportation, Inc. v. Rice, 434 U.S. 429, 440-441, 98 S.Ct. 787, 793-94, 54 L.Ed.2d 664 (1978).
106 S.Ct. at 2084-85.
The DABT argues that because any effect which the challenged tax preference scheme might have on interstate commerce is indirect and the tax is applied evenhandedly, the Pike balancing approach must be employed in this case. The DABT maintains that under that approach, the trial court erred in finding the challenged tax scheme violative of the Commerce Clause. The appellees, on the other hand, take the position that because the challenged provisions have both the purpose and effect of discriminating against interstate commerce, they were properly struck down by the trial court as "simple economic protectionism." They argue in the alternative that the preference scheme cannot withstand scrutiny under the Pike balancing test. After reviewing the challenged provisions, in light of the record in this case, we agree with the appellees that, even under the Pike balancing test, summary judgment was properly entered in their favor.[1]
Section 564.06, Florida Statutes (1985) provides in pertinent part:
Excise taxes on wines and beverages; exemptions. 
(1) As to beverages including wines, except natural sparkling wines and malt beverages, containing more than 1 percent alcohol by weight and less than 14 *1004 percent alcohol by weight, there shall be paid by all manufacturers and distributors a tax at the rate of $2.25 per gallon.
(2) As to all wines, except natural sparkling wines, containing more than 1 percent alcohol by weight and less than 14 percent alcohol by weight, of which the alcoholic content is manufactured exclusively from citrus fruits or varieties of the species Vitis rotundifolia, Vitis aestivalis ssp. simpsoni, Vitis aestivalis ssp. smalliana, Vitis shuttleworthii, Vitis munsoniana, or Vitis berlandieri, or from concentrates thereof, except for flavoring extracts, and upon all other such beverages, except malt beverages, containing more than 1 percent alcohol by weight and less than 14 percent alcohol by weight, of which the alcoholic content is manufactured exclusively from citrus fruits, varieties of the species Vitis rotundifolia, Vitis aestivalis ssp. simpsoni, Vitis aestivalis ssp. smalliana, Vitis shuttleworthii, Vitis munsoniana or Vitis berlandierei, citrus products, citrus byproducts, sugarcane, sugarcane byproducts, or from concentrates thereof, except for flavoring extracts, the tax imposed by subsection (1) shall not apply.
(3) As to all wines, except natural sparkling wines containing 14 percent or more alcohol by weight, there shall be paid by manufacturers and distributors a tax at the rate of $3 per gallon, except that this tax shall not be required to be paid upon all wines of which the alcoholic content is manufactured exclusively from citrus fruits or varieties of the species Vitis rotundifolia, Vitis aestivalis ssp. simpsoni, Vitis aestivalis ssp. smalliana, Vitis shuttleworthii, Vitis munsoniana, or Vitis berlandieri, or from concentrates thereof, except for flavoring extracts and containing 14 percent or more of alcohol by weight.
(4) As to natural sparkling wines, there shall be paid by all manufacturers and distributors a tax at the rate of $3.50 per gallon, except that this tax shall not be required to be paid upon all natural sparkling wines of which the alcoholic content is manufactured exclusively from citrus fruits or varieties of the species Vitis rotundifolia, Vitis aestivalis ssp. simpsoni, Vitis aestivalis ssp. smalliana, Vitis shuttleworthii, Vitis munsoniana, or Vitis berlandieri, or from concentrates thereof, except for flavoring extracts.
.....
(7) The exemption from the payment of taxes provided in subsections (2), (3), and (4) does not preclude the division from making periodic inspections necessary to carry out the provisions of this section.
.....
(9) The exemptions from payment of taxes provided in subsections (2), (3), and (4) or the tax rates set forth in subsection (10) shall not apply:
(a) To alcoholic beverages manufactured in states, territories, or countries which impose discriminatory taxes or requirements on alcoholic beverages manufactured or bottled outside of their boundaries;
(b) To alcoholic beverages manufactured or bottled in states, territories, or countries which provide agricultural price supports or other economic incentives or advantages exclusively for alcoholic beverages produced within their boundaries; or
(c) To alcoholic beverages manufactured or bottled in states, territories, or countries which provide export subsidies for agricultural produces used in making said alcoholic beverages.
Funding for research purposes or retail sale of wine at licensed wineries shall not be construed as an `economic incentive or advantage' within the meaning of this subsection.
Section 565.12, Florida Statutes (1985), provides in pertinent part:
Excise tax on liquors and beverages. 
(1)(a) As to beverages containing 14 percent or more of alcohol by weight and not more than 48 percent of alcohol by weight, except wines, there shall be paid by every manufacturer, distributor, and vendor a tax at the rate of $6.50 per gallon.

*1005 (b) As to all such beverages of which the distilled spirits are manufactured exclusively from citrus products, citrus byproducts, sugarcane, and sugarcane byproducts, except for flavoring extracts, the tax imposed by paragraph (a) does not apply. However, in lieu thereof there shall be paid by every manufacturer and distributor a tax at the rate of $4.35 per gallon.
(c) The tax rate provided in paragraph (b) shall not apply:
1. To alcoholic beverages manufactured in states, territories, or countries which impose discriminatory taxes or requirements on alcoholic beverages manufactured or bottled outside of their boundaries;
2. To alcoholic beverages manufactured or bottled in states, territories, or countries which provide agricultural price supports or other economic incentives or advantages exclusively for alcoholic beverages produced within their boundaries; or
3. To alcoholic beverages manufactured or bottled in states, territories, or countries which provide export subsidies for agricultural products used in making said alcoholic beverages.
Those beverages shall be taxed at the rate set forth in paragraph (a).
(2)(a) As to beverages containing more than 48 percent of alcohol by weight, there shall be paid by every manufacturer, distributor, and vendor a tax at the rate of $9.53 per gallon.
(b) As to all such beverages of which the distilled spirits are manufactured exclusively from citrus products, citrus byproducts, sugarcane, and sugarcane by products, except for flavoring extracts, the tax imposed by paragraph (a) does not apply. However, in lieu thereof there shall be paid by every manufacturer and distributor a tax at the rate of $4.95 per gallon.
(c) The tax rate provided in paragraph (b) shall not apply:
1. To alcoholic beverages manufactured in states, territories, or countries which impose discriminatory taxes or requirements on alcoholic beverages manufactured or bottled outside of their boundaries;
2. To alcoholic beverages manufactured or bottled in states, territories, or countries which provide agricultural price supports or other economic incentives or advantages exclusively for alcoholic beverages produces within their boundaries; or
3. To alcoholic beverages manufactured or bottled in states, territories, or countries which provide export subsidies for agricultural produces used in making said alcoholic beverages.
Those beverages shall be taxed at the rate set forth in paragraph (a).
The appellees maintain that a review of the legislative history of the tax scheme at issue will "reveal the legislature's transparent intent to use the Revised Florida Products Exemption to effect economic protectionism." They argue that the exemption scheme was devised "to protect certain Florida agricultural products, and to protect the manufacturers using those products" at the expense of out-of-state products and the manufacturers using those products and that such a discriminatory purpose requires that the tax preference be found a per se violation of the commerce clause under Bacchus. Because we find that the tax scheme at issue places a clear discriminatory burden on interstate commerce which the state has failed to justify in terms of legitimate local benefits other than the admitted benefits to local industry flowing from the statute, we need not determine whether the challenged provisions were in fact enacted to serve some underlying protectionist purpose. See Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 353, 97 S.Ct. 2434, 2446, 53 L.Ed.2d 383 (1977).
The DABT bases its position that the tax scheme at issue is evenhanded in its application on the fact that an exemption or preference is granted based on the classification of crop from which an alcoholic beverage is made rather than upon the in-state origin of the beverage. Affidavits from several experts establish that 1) citrus and *1006 sugarcane are grown in Florida as well as in other areas of the United States and the world and 2) the specified grape species are grown throughout the Southeastern United States and the Atlantic States Regions. The DABT acknowledges that "[w]ithout question, [the] provisions [at issue] may affect commerce by increasing the use of sugarcane and citrus in the manufacture of beverages," but maintains that "that effect is not a violation of the Commerce Clause." It contends that no "undue burden on interstate commerce" results from "the fact that some crops used in the interstate production of alcohol may be displaced by other crops grown and sold in the interstate market" or from the fact that there may be "a temporary displacement due to market adjustment." For this proposition, the DABT relies on decisions of the United Supreme Court in Exxon Corp. v. Governor of Maryland, 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978), and the Colorado Supreme Court in Archer Daniels Midland Co. v. State, 690 P.2d 177 (Colo. 1984). We find the Exxon decision clearly distinguishable from the situation before us and question whether Exxon was properly applied by the Colorado Court in Archer Daniels.
In Exxon, the Supreme Court upheld a Maryland statute prohibiting producers and refiners of petroleum products  all of which were out-of-state businesses  from retailing gasoline in the state. The statute was enacted in response to perceived inequities in the allocation of petroleum products to retail outlets during the fuel shortage of 1973. In challenging the statute, various oil companies, all of which were engaged in production and refining, as well as in the retail sale of petroleum products, argued that the statute violated the Commerce Clause by discriminating against producers and refiners, all of which were interstate businesses, in favor of independent retailers, most of which were local businesses. In rejecting this contention the Court first found that the statute served the legitimate state purpose of "controlling the gasoline retail market". 437 U.S. at 125, 98 S.Ct. at 2213. The Court went on to reject claims of discrimination at both the producing-refining and retailing ends of the petroleum industry. The Court concluded that the statute could not discriminate against interstate petroleum producers and refiners in favor of locally based competition because there were no locally based producers and refiners. The claim of discrimination at the retail level was also rejected because the statute placed "no barriers whatsoever" on competition in local markets by interstate independent dealers. The Court found the situation presented in Exxon distinguishable from cases such as Hunt and Dean Milk Co. v. City of Madison, 340 U.S. 349, 71 S.Ct. 295, 95 L.Ed. 329 (1951), in which a state has been found to have discriminated against interstate commerce, because the statute in Exxon was found "not [to] prohibit the flow of interstate goods, [to] place added costs upon them, or [to] distinguish between in-state and out-of-state companies in the retail market." 437 U.S. at 126, 98 S.Ct. at 2214. The Court held that neither the "fact that the burden of a state regulation falls on some interstate companies" nor the fact that "an otherwise valid regulation causes some business to shift from one interstate supplier to another" was enough, under the circumstances, to establish a Commerce Clause violation. 437 U.S. at 126-27, 98 S.Ct. at 2214. However, the Court noted in footnote 16 of the opinion that:
If the effect of a state regulation is to cause local goods to constitute a larger share, and goods with an out-of-state source to constitute a smaller share, of the total sales in the market  as in Hunt, 432 U.S., at 347, [97 S.Ct., at 2443] and Dean Milk, 340 U.S., at 354, [71 S.Ct. at 297]  the regulation may have a discriminatory effect on interstate commerce. But the Maryland statute has no impact on the relative proportions of local and out-of-state goods sold in Maryland and, indeed, no demonstrable effect whatsoever on the interstate flow of goods.
437 U.S. at 126 n. 16, 98 S.Ct. at 2214 n. 16. The Maryland statute had no effect whatsoever on the interstate flow of goods because, *1007 regardless of the status of the ultimate retailer, all the petroleum products sold within the state came from out-of-state.
The DABT also relies heavily on the Colorado Supreme Court's decision in Archer Daniels. The Archer Daniels court upheld a Colorado statute which provided for a sales tax reduction on gasohol containing at least ten percent alcohol derived from agricultural and forest products and limited the reduction to gasohol "produced from no more than three million gallons of alcohol annually from each facility having a design production capacity of seventeen million gallons or less per year." 690 P.2d at 180. As originally enacted, the challenged statute limited the tax break to gasohol made from Colorado-produced alcohol. The statute was challenged as violative of both the Commerce and Equal Protection Clauses of the United States Constitution. The Commerce Clause challenge was based on the fact that no Colorado fuel-alcohol producer had facilities which were large enough to be affected by the production capacity limitation; whereas, several out-of-state producers, including the plaintiff, had facilities with a production capacity of more than seventeen million gallons a year. Relying on the Exxon decision, the court concluded that the capacity limitations did not have the effect of discriminating against interstate commerce.
In Exxon, the lack of a competitive advantage of in-state independent dealers over out-of-state independent dealers and the fact that the Maryland regulation at issue had no effect whatsoever on the interstate flow of goods were critical factors. Along with these factors, it appears that both the Archer Daniels court and the appellants, sub judice, have overlooked what the United States Supreme court has recognized as the "most critical factor in Exxon," the absence of discrimination between interstate and local producer-refiners because there were no local producer-refiners to be favored. Lewis v. BT Investment Managers, Inc., 447 U.S. 27, 42, 100 S.Ct. 2009, 2018, 64 L.Ed.2d 702 (1980). In contrast, in the instant case, there are clearly manufacturers and distributors of alcoholic beverages made from local products who receive a competitive advantage from the challenged provisions. We find this distinction to be crucial and agree with the appellees that the challenged tax preference scheme places a burden on interstate commerce similar to that found to be present in the Hunt case.
In Hunt, the Washington State Apple Advertising Commission challenged as violative of the Commerce Clause a North Carolina statute which prohibited the display of state grades on closed containers of apples sold or shipped into the state. The Court held this facially neutral law had "the practical effect of not only burdening interstate sales of Washington apples, but also discriminating against them." 432 U.S. at 350, 97 S.Ct. at 2445. This conclusion was based on the fact that the challenged statute not only raised the cost of doing business for out-of-state dealers, thus, shielding the local apple industry from the competition of Washington apple growers, but also had the effect of "stripping away from the Washington apple industry the competitive and economic advantages it has earned for itself through its expensive inspection and grading system." 432 U.S. at 351, 97 S.Ct. at 2445. Finding no local benefits flowing from the statute which outweighed the discriminatory burden on interstate commerce and that nondiscriminatory alternatives were available, the Hunt Court held that the North Carolina statute violated the commerce clause.
The Hunt decision also illustrates that the mere fact that not all out-of-state competitors are disadvantaged by a state statute does not preclude a finding that the statute places a discriminatory burden on interstate commerce. See also, Mapco, Inc. v. Grunder, 470 F. Supp. 401. In Hunt, prior to the challenged statute's enactment, thirteen states shipped apples into North Carolina for sale. Seven of those states, including Washington, had their own grading systems and thus, were disadvantaged by the statute. 432 U.S. at 349, 97 S.Ct. at 2444. Despite the fact that the six states which did not have a grading *1008 system likely benefited from the same "leveling effect which insidiously operate[d] to the advantage of local apple producers," 432 U.S. at 351, 97 S.Ct. at 2445, the North Carolina statute was found to place a discriminatory burden in interstate commerce.
After considering the probable effect of the challenged tax scheme on both local and interstate commerce, we perceive the same type of discriminatory burden which was recognized in Hunt. It is undisputed that manufacturers and distributors of beverages which qualify for preferential treatment under this scheme are in direct competition with manufacturers and distributors of alcoholic beverages which do not. It is also undisputed that the beverages targeted for preferential treatment are those manufactured from specified crops, all of which will grow in Florida. It is likewise undisputed that alcoholic beverages made from citrus, sugarcane and the grape species designated in section 564.06 are regarded by consumers as less desirable than alcoholic beverages manufactured from vinifera grapes (which cannot be grown in commercial quantities in Florida) and other agricultural bases. With these facts in mind it becomes quite apparent that, just as the North Carolina statute which was struck down in Hunt, Florida's alcoholic beverage tax scheme clearly raises the relative cost of doing business for a manufacturer or distributor of alcoholic beverages which are not made from base crops which are "adapted to growing in Florida". And further, by increasing the cost of beverages made from non-designated crops such as vinifera grapes and grains relative to beverages made from the designated preferred crops, the challenged tax preference scheme strips away from manufacturers and distributors of those beverages the competitive and economic advantages which naturally flow from marketing beverages which are considered superior by the public. When such a burden on interstate commerce is demonstrated, "the burden falls on the state to justify it both in terms of the local benefits flowing from the statute and the unavailability of nondiscriminatory alternatives adequate to preserve the local interests at stake." Hunt, 432 U.S. at 353, 97 S.Ct. at 2446. See also, Minnesota v. Clover leaf Creamery Co., 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981).
The DABT and intervenors, Jacquin and Todhunter, contend that even if the challenged tax preference scheme is found to burden interstate commerce, it must be upheld because it was enacted to further Florida's legitimate state interest in promoting the use of important Florida agricultural crops and the beverages made from those crops. As stated by the DABT, the preference provisions further the "legitimate state interest" of "enhancing the flagging receptivity of consumers to alcoholic beverage products made from crops which Florida is adapted to growing." The DABT maintains that its position that a state's interest in promoting its own products is "legitimate" for commerce clause purposes is supported by the Supreme Court's recognition that "a state may enact laws pursuant to its police powers that have the purpose and effect of encouraging domestic industry." Bacchus, 468 U.S. at 271, 104 S.Ct. at 3055; see also Boston Stock Exchange, 429 U.S. 318, 336, 97 S.Ct. 599, 610, 50 L.Ed.2d 514 (1977) (States may structure their tax systems "to encourage the growth and development of intrastate commerce and industry.")
We agree with appellees that the stated purpose of promoting use of Florida products will not justify a discriminatory burden on interstate commerce such as that present in this case. The appellants' argument that any burden on interstate commerce is outweighed by the state's interest in promoting alcoholic beverages "made from crops which Florida is adapted to growing" is at odds with the "general principle that the Commerce Clause prohibits a State from using its regulatory power to protect its own citizens from outside competition." Lewis v. BT Investment Managers, Inc., 447 U.S. at 44, 100 S.Ct. at 2019. As the United States Supreme Court has recently noted in Metropolitan Life Insurance Co. v. Ward, 470 U.S. 869, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985):

*1009 [I]n Bacchus, although we observed as a general matter that "a State may enact laws pursuant to its police powers that have the purpose and effect of encouraging domestic industry," we held that in so doing, a State may not constitutionally impose a discriminatory burden upon the business of other States, merely to protect and promote local business.
470 U.S. at 876 n. 6, 105 S.Ct. at 1681 n. 6. (citations omitted)[2]
Not only have the appellants failed to show that a legitimate state concern is being served by the challenged provisions, they have also failed to show the stated local interest could not be promoted as well by alternative means which would have "a lesser impact on interstate activities." Pike, 397 U.S. at 142, 90 S.Ct. at 847. Indeed, as pointed out by appellee McKesson, several such alternatives have received express judicial approval under the Commerce Clause. For example, the legislature could have provided property tax relief to Florida manufacturers or growers, as was approved in Loretto Winery Ltd. v. Gazzara, 601 F. Supp. 850, 864 (S.D.N.Y. 1985). Other less discriminatory alternatives include direct cash subsidies, state-sponsored research, or state-sponsored promotional campaigns for alcoholic beverages made from Florida crops. See Id.
We cannot agree with appellant Jacquin's contention that Florida's alcoholic beverage tax scheme is entitled to "great deference because of the Twenty-first Amendment grant to the individual states of extraordinary powers to regulate alcoholic beverages." As noted in Bacchus, 468 U.S. at 276, 104 S.Ct. at 3058, and recently reiterated in Brown-Forman Distillers v. N.Y. State Liquor Authority, 106 S.Ct. at 2087, a state statute is entitled to such deference only when it is determined that the challenged law was enacted to carry out a "purpose of the Twenty-first Amendment." No clear concern of the twenty-first amendment has been shown to be furthered by this tax preference scheme which places an otherwise unjustified and therefore excessive burden on interstate commerce.
We also agree with the appellees that even if the overall preference scheme did not violate the commerce clause by placing an excessive burden on interstate commerce, sections 564.06(9)(a) and 565.12(1)(c)1., (2)(c)1. which deny the tax preference to "alcoholic beverages manufactured in states, territories, or countries which impose discriminatory taxes or requirements on alcoholic beverages manufactured or bottled outside of their boundaries" can not stand. A state may not enact discriminatory legislation in "response to another State's unreasonable burden on commerce." Sporhase v. Nebraska ex rel. Douglas, 458 U.S. 941, 958 n. 18, 102 S.Ct. 3456, 3465 n. 18, 73 L.Ed.2d 1254 (1982); See also Private Truck Council of America, Inc. v. Secretary of State, 503 A.2d 214, 218 (Me. 1986) (State may not enact discriminatory legislation designed to coerce another state into desisting from a Commerce Clause violation). The Commerce Clause itself provides the remedy for discriminatory taxes or requirements placed on out-of-state products. See Great Atlantic & Pacific Tea Co. v. Cottrell, 424 U.S. 366, 380, 96 S.Ct. 923, 932, 47 L.Ed.2d 55 (1976).
Because we find the challenged tax preference scheme violative of the Commerce Clause and affirm the summary judgment on that basis, we need not address the other challenges raised by the appellees.

TAX REFUND
We next consider whether the trial court erred in giving its ruling prospective effect and thereby denying cross-appellants McKesson and Tampa Crown a refund. McKesson argues that only a refund of the difference between the disfavored product's tax rate and the favored product's tax rate will cure the constitutional injury which it has suffered. It maintains that *1010 because it has paid the discriminatory taxes under protest, pursuant to section 215.26, Florida Statutes (1985), it is entitled to a refund under both state and federal law. Cross-appellant Tampa Crown makes a similar argument. We agree with the DABT that the prospective nature of the rulings below was proper in light of the equitable considerations present in this case. See Gulesian v. Dade County School Board, 281 So.2d 325 (Fla. 1973); Lemon v. Kurtzman, 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973). Not only was the tax preference scheme implemented by the DABT in good faith reliance on a presumptively valid statute, as pointed out by the DABT, if given a refund, cross-appellants would in all probability receive a windfall, since the cost of the tax has likely been passed on to their customers.
Accordingly, both those portions of the judgments below finding
[t]hat the provisions of [Florida Statutes] 564.06(2), (3) following the term "$3.00 per gallon," (4) following the term "3.50 per gallon," (7) and (9) through (13) and [Florida Statutes] 565.12(1)(b), (1)(c), (2)(b), (2)(c) and (5) through (10) are ... unconstitutional on their face,
and those portions giving the rulings prospective effect are affirmed.
It is so ordered.
McDONALD, C.J., and OVERTON, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] We find no merit to the DABT's claim that the trial court entered the summary judgments prematurely, thereby failing to allow the Department an adequant discovery period.
[2] We also note that promotion of domestic business or industry, when accomplished by imposing a discriminatory tax against out-of-state competitors, is not a legitimate state purpose under the Equal Protection Clause of the United States Constitution. Metropolitan Life Ins. Co. v. Ward, 470 U.S. 869, 882, 105 S.Ct. 1676, 1683, 84 L.Ed.2d 751 (1985).