574 So.2d 114 (1991)
DIVISION OF ALCOHOLIC BEVERAGES AND TOBACCO, et al., Appellants/Cross-Appellees,
v.
McKESSON CORPORATION, et al., Appellees/Cross-Appellants.
No. 70368.
Supreme Court of Florida.
January 15, 1991.
Robert A. Butterworth, Atty. Gen. and Joseph C. Mellichamp, III, Sr. Asst. Atty. Gen., and Gary R. Rutledge, Marguerite H. Davis and Paul R. Ezatoff, Jr. of Katz, Kutter, Haigler, Alderman, Davis, Marks & Rutledge, P.A., Tallahassee, for Jacquin-Florida Distilling Co., Inc. and Todhunter Intern., Inc.,
Thomas T. Steele and Charles A. Wachter of Fowler, White, Gillen, Boggs, Villareal and Banker, P.A., Tampa, and David G. Robertson and Neal S. Berinhout of Morrison & Foerster, San Francisco, Cal., for appellee/cross-appellant.
Wilbur E. Brewton and J. Riley Davis of Taylor, Brion, Buker & Greene, Tallahassee, Amicus Curiae for Nat. Distributing Co., Inc.
Michael P. McMahon and Gregory J. Kelly of Akerman, Senterfitt & Eidson, Orlando, Amicus Curiae for Orlando Holding, Inc.
Geoffrey Todd Hodges and Raymond T. Elligett, Jr. of Shackleford, Farrior, Stallings & Evans, P.A., Tampa, Amicus Curiae for The House of Midulla, Inc.

ON REMAND
EHRLICH, Senior Justice.
In Division of Alcoholic Beverages & Tobacco v. McKesson Corp., 524 So.2d 1000 (Fla. 1988), rev'd in part, ___ U.S. ___, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), this Court affirmed a summary judgment ruling that Florida's alcoholic beverage tax scheme, as set forth in sections 564.06 and 565.12, Florida Statutes (1985), which gave tax preferences and exemptions to certain alcoholic beverages made from crops which are adapted to growing in Florida, unconstitutionally discriminated against interstate commerce.[1] We also affirmed that *115 portion of the judgment giving the ruling prospective effect, thereby denying McKesson a refund of the difference between the tax rate of the disfavored beverages and that of those favored.[2]
The United States Supreme Court, in McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, ___ U.S. ___, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), reversed that portion of this Court's decision affirming the denial of postpayment relief and remanded to this Court for further proceedings consistent with its opinion. The Supreme Court held that
if a State places a taxpayer under duress promptly to pay a tax when due and relegates him to a postpayment refund action in which he can challenge the tax's legality, the Due Process Clause of the Fourteenth Amendment obligates the State to provide meaningful backward-looking relief to rectify any unconstitutional deprivation.
110 S.Ct. at 2247 (footnote omitted). In this case, Florida required taxpayers to raise their objections to the tax at issue in a postdeprivation refund action pursuant to section 215.26, Florida Statutes (1985). Therefore, the Court reasoned that to satisfy due process, the state must provide McKesson with "not only a fair opportunity to challenge the accuracy and legal validity of [its] tax obligation, but also a `clear and certain remedy' for any erroneous or unlawful tax collection to ensure that the opportunity to contest the tax is a meaningful one." Id. 110 S.Ct. at 2251 (footnote and citation omitted). After looking to a line of cases dealing with the issue, the Court explained that because
a State found to have imposed an impermissibly discriminatory tax retains flexibility in responding to this determination[,] Florida may reformulate and enforce the Liquor Tax during the contested tax period in any way that treats petitioner and its competitors in a manner consistent with the dictates of the Commerce Clause.
Id. 110 S.Ct. at 2252. Under the Court's opinion, the state may meet its obligation of providing "meaningful backward-looking relief," id. 110 S.Ct. at 2247, for the unconstitutional deprivation which occurred in this case by
refunding to petitioner the difference between the tax it paid and the tax it would have been assessed were it extended the same rate reductions that its competitors actually received... . Alternatively, to the extent consistent with other constitutional restrictions, the State may assess and collect back taxes from petitioner's competitors who benefited from the rate reductions during the contested tax period, calibrating the retroactive assessment to create in hindsight a nondiscriminatory scheme... . Finally, a combination of a partial refund to petitioner and a partial retroactive assessment of tax increases on favored competitors, so long as the resultant tax actually assessed during the contested tax period reflects a scheme that does not discriminate against interstate commerce.
Id. 110 S.Ct. at 2252 (footnote and citation omitted). The Court has expressly provided that it is the state which has the option of choosing which form of relief it will provide, so long as that relief satisfies the minimum federal requirements outlined in the Court's opinion. Id. 110 S.Ct. at 2258.
Accordingly, the Division of Alcoholic Beverages and Tobacco (DABT) was granted leave to advise this Court of the form of relief the state wishes to provide. The state proposes to retroactively assess and collect taxes from those of McKesson's competitors who benefited from tax rate reductions during the contested tax period. DABT seeks to implement the scheme by promulgating an emergency rule setting *116 forth the procedure for the retroactive assessment and collection of the tax.
McKesson contends that a tax refund is the only "clear and certain remedy" because the retroactive taxation of its competitors would, among other things, violate the due process rights of those sought to be taxed and therefore would not be "consistent with other constitutional restrictions." (Quoting 110 S.Ct. at 2252). Amici, National Distributing Company, Inc., Orlando Holding, Inc., and House of Midulla, Inc., all wholesale distributors of alcoholic beverages that will be subject to the retroactive tax, agree with McKesson that the state's chosen remedy will violate various state and federal restrictions.
In light of the state's proposal, we remand to the trial court for further proceedings on McKesson's claim for a refund. While McKesson may not necessarily be entitled to a refund, it is entitled to a "clear and certain remedy," as outlined in the Supreme Court's opinion. Because nonparties, such as amici, will be directly affected by the retroactive tax scheme proposed by the state, all affected by the proposed emergency rule must be given notice and an opportunity to intervene in this action. Therefore, on remand, the trial court not only must determine whether the state's proposal meets "the minimum federal requirements" outlined in the Supreme Court's opinion, it also must determine whether the proposal comports with federal and state protections afforded those against whom the proposed tax will be assessed.
We emphasize that the state has the option of choosing the manner in which it will reformulate the alcoholic beverage tax during the contested period so that the resultant tax actually assessed during that period reflects a scheme which does not discriminate against interstate commerce. Therefore, if the trial court should rule that the state's proposal to retroactively assess and collect taxes from McKesson's competitors does not meet constitutional muster and such ruling is upheld on appeal, the state may offer an alternative remedy for the trial court's review. However, any such proposal likewise must satisfy the standards set forth by the Supreme Court as well as be consistent with other constitutional restrictions.
Accordingly, that portion of the trial court's judgment denying McKesson postpayment relief is reversed and the cause is remanded for further proceedings consistent with this opinion and that of the United States Supreme Court.
It is so ordered.
SHAW, C.J., and McDONALD and KOGAN, JJ., concur.
OVERTON, J., concurs with an opinion.
BARKETT, J., concurs specially with an opinion.
GRIMES, J., concurs with an opinion, in which BARKETT, J., concurs.
OVERTON, Justice, concurring.
As explained in the majority opinion, the United States Supreme Court has given the state three alternatives to right the unconstitutional exemption:
(1) The state may refund to McKesson and like-positioned distributors the difference between the tax they paid and the tax they would have been assessed. In this instance, the state would be required to refund possibly $285 million to McKesson and like-positioned distributors. I agree with Justice Ehrlich's statement in our initial opinion[3] that this result would constitute a windfall to McKesson and the other distributors since they have already collected the bulk of this tax from the public through the sale of alcoholic beverages.
(2) The state may assess and collect back taxes from the beneficiaries of the tax exemption as long as such assessment comports with other constitutional restrictions, including that it is not harsh or oppressive. This alternative would result in the state's seeking to recover $8.1 million in back taxes *117 from the beneficiaries of the tax exemption. In this instance, these distributors would not have an opportunity to collect this additional tax from the public to which they sold the alcoholic beverages.
(3) The state may utilize a combination of a partial refund and a partial retroactive tax assessment. I have no idea how a scheme could be devised to make this alternative work under the circumstances of this case.
It is important to note that this case was not remanded to the Supreme Court of Florida in order for this Court to decide which alternative means should be chosen to rectify this wrong. The case was remanded for the "state" to decide. Since the executive branch is charged with implementing the tax laws, collecting the taxes, and operating the government in accordance with those laws, I find that it is a clear function of the executive branch to initially choose which alternative to apply, given the choices articulated by the United States Supreme Court. Our responsibility is not to second-guess the executive branch but, instead, to assure that the choice made is implemented in a constitutional manner.
The executive branch has chosen the second alternative, and I find that we must approve that choice with the understanding that those who will be required to pay the retroactive assessment must be provided appropriate notice, an opportunity to be heard concerning the amount of the assessment, and a full and fair opportunity to present a claim that the imposition of this additional tax is unconstitutionally harsh and oppressive, in accordance with the principles articulated by the United States Supreme Court in footnote 23 of its decision in McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, ___ U.S. ___, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990).
BARKETT, Justice, specially concurring.
I believe, upon remand, that the solution proposed by Justice Grimes would resolve this legal dilemma most equitably for all parties.
GRIMES, Justice, concurring.
The fiscal ramifications of this matter are ominous for the State of Florida. The United States Supreme Court rejected as "speculative" what seemed obvious to this Court  that to award McKesson a refund would probably result in a windfall because McKesson had likely passed on the tax to its customers.[4] To make matters worse, only a small percentage of the alcoholic beverages sold in this state were subject to the preferential tax treatment. Yet, under the ruling of the United States Supreme Court, in order to provide tax refunds under the first option, the state would have to pay the difference between the preferential tax and the full tax for all alcoholic beverages sold during the applicable three-year period which did not receive the benefit of the preferential tax. The state represents that the claims for refund exceed $300,000,000 while the back taxes which the state seeks to collect total $8,199,966. McKesson has made a claim for refund of $35,719,648. Further, I gather from reading the briefs that because most distributors sold beverages which carried the full tax as well as beverages which received the tax benefit, the very distributors from whom the state proposes to collect the back taxes have claims for refund which vastly exceed the amount of the taxes they may be required to pay.
Clearly, the state has the option of choosing the manner in which it will reformulate the alcoholic beverage tax during the contested period so that the resultant tax actually assessed during that period reflects a scheme which does not discriminate against interstate commerce. Further, the Supreme Court makes it clear that if the state collects the difference between the taxes actually paid on the beverages which received the preferential treatment and what would have been paid had no preference been given, McKesson's claim will have *118 been satisfied without receiving any monies. By collecting the additional taxes from McKesson's favored competitors, "the State may retain the tax appropriately levied upon [McKesson] pursuant to this reformulated scheme because this retention would deprive [McKesson] of its property pursuant to a tax scheme that is valid under the Commerce Clause." McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, ___ U.S. ___, 110 S.Ct. 2238, 2252, 110 L.Ed.2d 17 (1990). Having elected to collect the back taxes, the question is whether the state may retroactively tax the distributors upon their sales of the preferred beverages during the subject period.
In footnote 23 of its opinion, the Supreme Court made the following observation with reference to the retroactive assessment of taxes:
We previously have held that the retroactive assessment of a tax increase does not necessarily deny due process to those whose taxes are increased, though beyond some temporal point the retroactive imposition of a significant tax burden may be "so harsh and oppressive as to transgress the constitutional limitation," depending on "the nature of the tax and the circumstances in which it is laid." Welch v. Henry, 305 U.S. 134, 147, 59 S.Ct. 121, 126, 83 L.Ed. 87 (1938). See United States v. Hemme, 476 U.S. 558, 106 S.Ct. 2071, 90 L.Ed.2d 538 (1986); United States v. Darusmont, 449 U.S. 292, 101 S.Ct. 549, 66 L.Ed.2d 513 (1981); cf. United States v. Sperry Corp., 493 U.S. 52, ___, 110 S.Ct. 387, 396, 107 L.Ed.2d 290 (1989) ("It is surely proper for Congress to legislate retrospectively to ensure that costs of a program are borne by the entire class of persons that Congress rationally believes should bear them"); Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 16, 96 S.Ct. 2882, 2893, 49 L.Ed.2d 752 (1976) ("[L]egislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations. This is true even though the effect of the legislation is to impose a new duty or liability based on past acts") (citations omitted).
Because we do not know whether the State will choose in this case to assess and collect back taxes from previously favored distributors, we need not decide whether this choice would violate due process by unduly interfering with settled expectations.
Should the State choose this remedial alternative, the State's effort to collect back taxes from previously favored distributors may not be perfectly successful. Some of these distributors, for example, may no longer be in business. But a good-faith effort to administer and enforce such a retroactive assessment likely would constitute adequate relief, to the same extent that a tax scheme would not violate the Commerce Clause merely because tax collectors inadvertently missed a few in-state taxpayers.
McKesson Corp., 110 S.Ct. at 2252 n. 23.
The amici distributors argue that it would be unfair for them to be required to pay the back taxes when they can no longer pass these taxes along to their customers. They assert that the retroactive imposition of these taxes would be harsh and oppressive and could have the effect of putting them out of business. The attempt to retroactively interfere with their settled expectations would violate due process. The state responds that the distributors have no vested rights which would be impaired by the back assessment of the taxes. The state points out that only the exemption for the preferred beverages was found unconstitutional. Under the rationale of State ex rel. Nuveen v. Greer, 88 Fla. 249, 102 So. 739 (1924), the exemption was void ab initio, and the exemption is severable from the balance of the tax. National Distrib. Co. v. Office of Comptroller, 523 So.2d 156 (Fla. 1988). The state further contends that the collection of the back taxes would not unfairly impair settled expectations because the distributors chose to obtain the benefits of selling the favored beverages when the constitutionality of the exemption was always in doubt.
If the state can constitutionally collect all of the back taxes, McKesson will not be entitled to a refund. However, as I interpret *119 the Supreme Court's opinion, if the state cannot constitutionally collect any of the back taxes, McKesson's claim for refund will have to be paid in full. Further, it is my understanding that if the state is prohibited from collecting some of the back taxes because of due process considerations of the distributors, McKesson will be entitled to a partial refund of its claim in proportion to the amount of back taxes which the state is unable to collect.[5] Fulfilling the first option will result in a windfall to McKesson and the other distributors, while employing the second option will unfairly penalize the distributors which can no longer recoup the taxes from their customers. However, I submit that an implementation of the following plan would eliminate any due process concerns, do justice to the concerned parties, and also satisfy the requirements of the commerce clause.[6]
Under these circumstances, I would suggest that the judge first determine the total of back taxes owed by each of the distributors as well as the claims for refund of each distributor.[7] With respect to each distributor, the judge should then compute the amount of back taxes which could be collected that would fully offset the claim for refund of that distributor. This would be accomplished through the use of a percentage derived by dividing the sum of the back taxes and the claim for refund into the amount of the back taxes. Only that percentage of the back taxes would be deemed uncollectible and because of that fact only that percentage of the claim for refund would be upheld. The effect would be to wash out the claim for refund against most of the back taxes.[8] The distributors could not complain of harsh and oppressive treatment or disruption of settled expectations because they would not be required to pay any additional monies to the state. In any event, whatever competitive disadvantages they suffered by having to pay the higher tax on sales of the nonpreferred beverages should have been offset by the competitive advantage they derived from paying a lower tax on sales of the preferred beverages.
At this point, McKesson's claim would not have been fully satisfied for purposes of the commerce clause because a portion of the back taxes would have been considered uncollectible for constitutional reasons. Thus, it would be necessary to compute the total amount of uncollectible taxes,[9] and the proportion that this figure *120 bears to the total back taxes would then be applied to McKesson's claim for refund.[10]
I do not know how this legal dilemma will work out. However, I do know that the state should not be required to pay claims for refund by distributors which sold both preferred and nonpreferred beverages that exceed their payment of back taxes when the reason the state may not be able to collect all of the back taxes is that it would be harsh and oppressive to do so.
BARKETT, J., concurs.
NOTES
[1] The following provisions were held unconstitutional:

[Florida Statutes] 564.06(2), (3) following the term "$3.00 per gallon," (4) following the term "$3.50 per gallon," (7) and (9) through (13) and [Florida Statutes] 565.12(1)(b), (1)(c), (2)(b), (2)(c), and (5) through (10).
Division of Alcoholic Beverages & Tobacco v. McKesson Corp., 524 So.2d 1000, 1010 (Fla. 1988) (brackets in original), rev'd in part, ___ U.S. ___, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1991).
[2] Although Tampa Crown Distributors, Inc. also originally sought a refund, only McKesson pursued this claim before the United States Supreme Court.
[3] Division of Alcoholic Beverages & Tobacco v. McKesson Corp., 524 So.2d 1000 (Fla. 1988), rev'd in part, ___ U.S. ___, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990).
[4] The Supreme Court also dismissed the more realistic measure of McKesson's damages  the loss of profits suffered due to the competitive disadvantage which resulted from the discriminating tax  because McKesson had not sought such damages.
[5] Thus, if twenty percent of the back taxes could not be collected for this reason, McKesson would be entitled to a refund of twenty percent of its claim.
[6] The feasibility of this plan is premised at least in part upon my understanding that most, and perhaps all, distributors other than McKesson sold both beverages which received the tax preference and those upon which the full tax was paid. I further understand that the sale of the beverages which received this preference probably constituted no more than five percent of the market.
[7] Of course, each distributor will have been given notice of these proceedings and have had the opportunity to contest the proper amount of back taxes and claims for refund.
[8] This is illustrated by the following examples:

 Back Claims for Applicable Collectible Allowable Uncollectible
Distributor Taxes Refund Percentage Taxes Claims Taxes
 A $500,000 $9,500,000 5% 500,000 $475,000 $475,000 $25,000
 __________
 10,000,000
 B 300,000 4,700,000 6% 300,000 282,000 282,000 18,000
 _________
 5,000,000
 C 800,000 19,200,000 4% 800,000 768,000 768,000 32,000
 __________
 20,000,000

[9] As noted by the Supreme Court, any taxes which the state is unable to collect because distributors have gone out of business should not be considered as uncollectible for purposes of this computation.
[10] For example, if the total amount of taxes which are uncollectible from all distributors comes to six percent of the total of the back taxes sought to be collected, McKesson would be entitled to a refund of six percent of its total claim because the competitive disadvantage represented by the balance of its claim will have been satisfied by the state's collection of ninety-four percent of the back taxes from its competitors. This rationale would also be applicable to any other distributors which sold only beverages which were not subject to the preferred tax.