643 So.2d 16 (1994)
DIVISION OF ALCOHOLIC BEVERAGES AND TOBACCO, Department of Business Regulation; and Office of the Comptroller, State of Florida, Appellants/Cross-Appellees,
v.
McKESSON CORPORATION; Florida West Coast Beverage Distributors, Inc.; Grantham Distributing Company, Inc.; and Tampa Crown Distributors, Inc., Appellees/Cross-Appellants.
No. 93-1703.
District Court of Appeal of Florida, First District.
September 7, 1994.
Rehearing Denied October 31, 1994.
*17 Jack L. McRay, Gen. Counsel, John B. Fretwell, Deputy Gen. Counsel, William B. Nickell, Asst. Gen. Counsel, Dept. of Business and Professional Regulation, Tallahassee, Robert A. Butterworth, Atty. Gen., Joseph C. Mellichamp, III, Sr. Asst. Atty. Gen., Eric J. Taylor, Asst. Atty., Office of the Atty. Gen., Tax Section, Tallahassee, for appellants/cross-appellees.
David G. Robertson and Paul T. Lufkin of Morrison & Foerster, San Francisco, CA, Charles Wachter and Thomas T. Steele of Fowler, White, Gillen, Boggs, Villareal & Banker, Tampa; M. Stephen Turner of Broad & Cassel, J. Riley Davis, Gary R. Rutledge and Paul Ezatoff of Katz, Kutter, Haigler, Alderman, Davis, Marks & Rutledge, Tallahassee, James L. Chase of James L. Chase, P.A., Richard A. Arnold and Scott E. Perwin of Kenny, Nachwalter, Seymour & Arnold, Pensacola, John D. Beasley of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, John McNeel Breckenridge, Jr. of The Breckenridge Group, Tampa, Geoffrey Todd Hodges and Gregory P. Hansel of Shackleford, Farrior, Stallings & Evans, P.A., Tampa, for Florida West Coast Beverage Distributors, Inc.
Michael P. McMahon and Virginia B. Townes of Akerman Senterfitt & Eidson, P.A., Orlando for Grantham Distributing Co., Inc.
Harold F.X. Purnell of Rutledge, Ecenia, Underwood and Purnell, P.A., Tallahassee, for Tampa Crown Distributors, Inc., for appellees/cross-appellants.
ERVIN, Judge.
Although numerous issues have been raised in this appeal, we conclude that as a result of agreements entered between appellant, the Division of Alcoholic Beverages and Tobacco, and various appellees, the only issue now requiring resolution is whether appellee Tampa Crown Distributors, Inc., retains standing as a party to this appeal. Having decided that Tampa Crown has no interest remaining in the present litigation, we reverse the trial court's order granting partial summary judgment in Tampa Crown's favor and remand with directions that judgment be entered for the Division.
The history of this case is well documented in the numerous published opinions, to wit: Division of Alcoholic Beverages & Tobacco v. McKesson Corp., 524 So.2d 1000 (Fla. 1988) (McKesson I); McKesson Corp. v. Division *18 of Alcoholic Beverages & Tobacco, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990) (McKesson II); and Division of Alcoholic Beverages & Tobacco v. McKesson Corp., 574 So.2d 114 (Fla. 1991) (McKesson III). Consequently, this opinion summarizes only those facts necessary to our decision in the present appeal.
McKesson Corporation and Tampa Crown Distributors, licensed wholesale distributors of alcoholic beverages in Florida, separately challenged sections 564.06 and 565.12, Florida Statutes (1985), providing for preferential tax treatment to domestic distributors of alcoholic beverages manufactured from products grown in Florida. The trial court entered final and partial summary judgments in favor of Tampa Crown and McKesson, respectively, invalidating the discriminatory taxing scheme on Commerce Clause grounds, but made its rulings prospective in nature, causing it to deny the distributors' tax refund requests. The Division appealed the Commerce Clause rulings, and Tampa Crown and McKesson cross-appealed the prospective application rulings. This court consolidated the two cases and certified the case to the Florida Supreme Court, which affirmed the trial court's rulings in McKesson I.
McKesson alone filed a petition for writ of certiorari in the United States Supreme Court, which agreed that the taxing scheme violated the Commerce Clause, but struck that portion of McKesson I which had granted only prospective relief. In order to provide McKesson with a clear and certain remedy for the past discrimination, the Court suggested the following three remedies: that the state refund McKesson the difference between the tax it had paid and the tax it would have paid had it received the preferential tax rate; that it assess and collect back taxes from McKesson's competitors which had benefited from the rate reductions; and, finally, that it consider a combination of a partial refund to McKesson and a partial retroactive assessment of tax increases on the favored competitors. McKesson II.
Following remand of the case to the Florida Supreme Court, the Division announced that it proposed to assess back taxes against all distributors which had received preferential tax treatment. The court thereupon remanded the case to the trial court to determine whether the chosen remedy satisfied minimum constitutional requirements. McKesson III. Thereafter the Division implemented its policy decision by adopting emergency rules outlining the procedure for retroactively assessing and collecting taxes from McKesson's competitors which had benefited from the unconstitutional tax scheme. See 17 Fla. Admin. Weekly 1626-28 (Apr. 12, 1991) (Emergency Rules 7AER91-8 to 10). Tampa Crown filed a petition before the trial court on remand, seeking to appear in the proceeding on the ground that it was a party and would be substantially affected by the outcome. The Division opposed the petition, arguing that only those distributors which had retroactive tax assessments entered against them had standing to intervene, and that Tampa Crown, neither having sold any of the preferred products, nor assessed against it any back tax and seeking only a refund, lacked intervenor status. Additionally, the Division asserted that because Tampa Crown had not pursued an appeal to the United States Supreme Court, as had McKesson, McKesson I was res judicata insofar as Tampa Crown's claim for relief. Tampa Crown answered that it was clearly affected, because it was one of the parties that had been wrongfully discriminated against, and it was entitled, as was McKesson, to a clear and certain remedy. The trial court granted Tampa Crown's petition and allowed it to appear for the limited purpose, within the confines of the Supreme Court's mandate, of presenting argument against the remedy chosen by the state. The question now before us concerns the propriety of the lower court's ruling.
Tampa Crown contends that it has standing based on United States Supreme Court Rule 12.4 (formerly known as rule 19.6). This rule, involving certiorari review, provides:
All parties to the proceeding in the court whose judgment is sought to be reviewed shall be deemed parties in this Court, unless the petitioner shall notify the Clerk of this Court in writing of the petitioner's belief that one or more of the parties below *19 has no interest in the outcome of the petition.
Initially, we question whether the above rule applies or whether rule 12.2, formerly known as rule 19.4, is applicable. Rule 12.2 states that parties who are "interested jointly, severally, or otherwise in a judgment may petition separately for a writ of certiorari; or any two or more may join in a petition." As explained in Supreme Court Practice § 6.22 (7th ed. 1993), by Robert L. Stern, Eugene Gressman, Stephen M. Shapiro and Kenneth S. Geller, rule 12.2 is implicated once cases have been consolidated. The instant case appears to fall somewhere between the two rules; it involves separate suits and judgments brought in the trial court, which were thereafter consolidated in the appellate court, thereby suggesting the application of rule 12.2. The case also involves one proceeding and one judgment in the Florida Supreme Court (McKesson I), hence implying the applicability of rule 12.4. If we were to apply the provisions of rule 12.2 to the instant case, Tampa Crown could not be deemed a party to the case filed in the United States Supreme Court, as it neither filed its own petition nor joined in McKesson's petition before the Court. As a result, it could not be considered a party to McKesson II, or McKesson III for that matter, and the decision in McKesson I holding the statutory taxing scheme unconstitutional, but making the decision prospective in its application, must be considered res judicata as to the rights of Tampa Crown. Thus, the resolution to the issue of Tampa Crown's standing to seek a refund turns on the applicability of rule 12.4.
Although rule 12.4 offers superficial support to Tampa Crown's position, we nevertheless conclude that Tampa Crown was required to take some affirmative act before the United States Supreme Court in order for its refund request to survive. Section 6.20 of Supreme Court Practice explains that rule 12.4 is applicable once the petitioner fails, either intentionally or accidentally, to name a party who was involved in the proceeding below and who still retains an interest in the case. Under this rule, any party before an inferior tribunal is automatically made a party before the Supreme Court without the necessity of such party filing any motion to be named or added as a party. The authors point out, however, that the party should notify the clerk and any other parties that he or she has an interest in the outcome of the case and intends to participate as a party under rule 12.4. Although the rule provides that the unnamed party is assigned the role of respondent, regardless of that party's interest, he or she is free to file a response or brief appropriate to his or her position.
We have found no cases directly on point; however, after reviewing several of the cases cited in Supreme Court Practice, we conclude that even if Tampa Crown were automatically made a party under rule 12.4, in order for its claim for relief to prevail, Tampa Crown was required to take further action in the Supreme Court, by filing either a notice informing the clerk of its continuing interest in the case or a brief adopting McKesson's brief. See Stern, Gressman, Shapiro & Geller, Supreme Court Practice § 6.20 (7th ed. 1993). For example, in Director, Office of Workers' Compensation Programs v. Perini North River Associates, 459 U.S. 297, 304 n. 12, 103 S.Ct. 634, 640 n. 12, 74 L.Ed.2d 465, 472 n. 12 (1983), the party that was made a respondent by virtue of rule 12.4 demonstrated its continued stake in the outcome by filing in support of the petitioner at both the certiorari and merit stages of the proceedings. In Washington v. Davis, 426 U.S. 229, 237 n. 7, 96 S.Ct. 2040, 2046 n. 7, 48 L.Ed.2d 597, 606 n. 7 (1976), the party named respondent filed a brief pursuant to rule 12.4, and in Metropolitan Washington Airports Authority v. Citizens for the Abatement of Aircraft Noise, Inc., 501 U.S. 252, 263 & n. 12, 111 S.Ct. 2298, 2305 & n. 12, 115 L.Ed.2d 236, 251 & n. 12 (1991), the party designated a respondent under rule 12.4 filed a brief arguing its position. Similarly, in Mullins Coal Co., Inc. of Virginia v. Director, Office of Workers' Compensation Programs, 484 U.S. 135, 140 n. 8, 108 S.Ct. 427, 430-31 n. 8, 98 L.Ed.2d 450, 458-59 n. 8 (1987), both an employee and his employer appeared before the United States Supreme Court as respondents pursuant to rule 19.6, and each actively participated, albeit on opposing sides.
*20 Tampa Crown has not contended that it filed a petition with the United States Supreme Court or that it joined in McKesson's petition. Nor has it asserted that it did anything before the Supreme Court, such as filing a notice to assert its continuing interest, or a brief in support of McKesson's position. Finally, nothing in McKesson II discloses that Tampa Crown was either a petitioner or a respondent, and its attorney is not referenced. Under the circumstances, we conclude that Tampa Crown has failed to establish that it was a party before the Supreme Court in McKesson II, and, therefore, it has no entitlement to any of the possible avenues of relief which the Court outlined therein.
On this point, we found O'Bannon v. Town Court Nursing Center, 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980), particularly instructive. That case involved the decertification of a nursing home as a provider under certain Medicare/Medicaid agreements with the Department of Housing, Education and Welfare (HEW) and the Pennsylvania Department of Public Works (DPW). The nursing home and six Medicaid patients thereafter filed an action in district court, claiming that they were entitled to an evidentiary hearing on the merits of the decertification before the Medicaid payments could be stopped. The proceedings culminated with an order in which, among other things, the court dissolved an injunction which had required HEW and DPW to continue the payments; however, HEW and DPW were required to pay for services which had actually been provided to the patients. The nursing home and patients appealed portions of the order adverse to them, while HEW cross-appealed that part requiring HEW and DPW to pay for actual services rendered. Although DPW was named as an appellee, it failed to take any action in the appeal. The Court of Appeals reversed that part of the order dissolving the injunction, thereby requiring HEW and DPW to continue paying Medicaid benefits until the patients were granted a hearing, and it affirmed that portion directing HEW and DPW to pay for the actual services provided. DPW then filed a petition for certiorari to the United States Supreme Court. In footnote 14, the Court explained that because DPW did not cross-appeal the district court's ruling requiring it to make payments for actual services provided to the patients, it effectively accepted the court's directive. DPW's petition for certiorari, therefore, could not revive the issue of the propriety of that portion of the order. Id. at 783 n. 14, 100 S.Ct. at 2474 n. 14, 65 L.Ed.2d at 516-17 n. 14.
An analogy from the above case can be made to the facts in the instant case. Because Tampa Crown did not seek review in the United States Supreme Court of the Florida Supreme Court's decision making its rulings prospective, Tampa Crown must be considered to have accepted that decision and, therefore, to have no interest in any remaining litigation. As a consequence, the decision in McKesson I, which denied the distributors' refund requests by virtue of the prospective nature of its ruling, is res judicata as to Tampa Crown.
REVERSED and REMANDED with directions that judgment be entered for the Division.
WOLF and KAHN, JJ., concur.