SHEPHERD, C.J.,
dissenting in part.
The news of this court’s sua sponte decision, issued today, to exempt the real property from the natural consequences of nearly half-a-million dollars of defaulted mortgage debt in this case because of nonpayment of excise and intangible taxes will, I think, come as quite a surprise to the readers of the majority opinion. The question of whether taxes were paid neither was raised below nor on appeal. More importantly, the majority’s sua sponte decision to examine the notes and mortgages for payment of taxes admits to no limiting principle. Under its mandate, we have become duty-bound to examine all debt instruments, mortgages, and other similar obligations in the quiet of our chambers for compliance with this state’s complicated and ever-changing excise and tangible income tax laws and regulations.[17] I do not believe this is the law and, for this reason, most respectfully dissent.
The crux of the majority opinion, from which all else flows, is its belief that a mortgage debt is unenforceable in Florida unless excise[18] and intangible taxes[19] have been paid on the mortgage, regardless of whether nonpayment is raised as a bar to enforcement. As authority for the former, the majority plucks a phrase from the last sentence of section 201;08(l)(b) of the Florida Statutes, which states that a mortgage, trust deed, or other instrument “shall not be enforceable in any court of this state as to any such advance unless and until the tax due thereon upon each advance that may have been made thereunder has been paid.” Majority Op. p.- 430 (emphasis added). As the bolded word suggests, and analysis reveals, the phrase does not support such an expansive reading of the statute.-
The clause lifted by the majority from section 201.08(b)(1) is taken from the last sentence of section 201.08(b)(1). Section 20Í.08 reads in full as follows:
201.08. Tax on promissory or nonnegotiable notes, written obligations to pay money, or assignments of wages or other compensation; exception (l)(a) On promissory notes, nonnegotiable notes, written obligations to pay money, or assignments of salaries, wages, or other compensation- made, executed, delivered, sold, transferred, or assigned in the state, and for each renewal of the same, the tax shall be 35 cents on each $100 or fraction thereof of the indebtedness or obligation evidenced thereby. The tax on any document described in this paragraph may not exceed $2,450. .
(b) On mortgages, trust deeds,- security agreements, or other evidences of indebtedness filed or recorded in this state, and for each renewal, of the same, the tax shall be 35 cents on each $100 or fraction thereof of the indebtedness or obligation evidenced thereby. Mortgages, including, but not limited to, mort *436 gages executed without the state and recorded in the state, which incorporate the certificate of indebtedness, not otherwise shown in separate instruments, are subject to the same tax at the same rate. When there is both a mortgage, trust deed, or security agreement and a note, certificate of indebtedness, or obli-gation, the tax shall be paid on the mortgage, trust deed, or security agreement at the time of recordation. A notation shall be made on the note, certificate of indebtedness, or obligation that the tax has been paid on the mortgage, trust deed, or security agreement. If a mortgage, trust deed, security agreement, or other evidence of indebtedness is subsequently filed or recorded in this state to evidence an indebtedness or obligation upon which tax was paid under paragraph (a) or subsection (2), tax shall be paid on the mortgage, trust deed, security agreement, or other evidence of indebtedness on the amount of the indebtedness or obligation evidenced which exceeds the aggregate amount upon which tax was previously paid under this paragraph and under paragraph (a) or subsection (2). If the mortgage, trust deed, security agreement, or other evidence of indebtedness subject to the tax levied by this section secures future advances, as provided in s. 697.04, the tax shall be paid at the time of recordation on the initial debt or obligation secured, excluding future advances; at the time and so often as any future advance is made, the tax shall be paid on all sums then advanced regardless of where such advance is made. Notwithstanding the aforestated general rule, any increase in the amount of original indebtedness caused by interest accruing under an adjustable rate note or mortgage having an initial interest rate adjustment interval of not less than 6 months shall be taxable as a future advance only to the extent such increase is a computable sum certain when the document is executed. Failure to pay the tax shall not affect the lien for any such future advance given by s. 697.04, but any person who fails or refuses to pay such tax due by him or her is guilty of a misdemeanor of the first degree. The mortgage, trust deed, or other instrument shall not be enforceable in any court of this state as to any such advance unless and until the tax due thereon upon each advance that may have been made thereunder has been paid.
§ 201.08(1), Fla. Stat. (2005) (emphasis added). On plain reading, it is clear the sentence on which the majority relies for support is applicable only to future advances. The majority’s interpretation of the statute, that “each advance” includes both the initial loan disbursement and any subsequent advances, is unsustainable. Reading the words in the context of the whole statute, as we are required to do, Acosta v. Richter, 671 So.2d 149, 153-54 (Fla.1996), “each advance cannot be interpreted to include the original loan disbursal because the statute distinguishes between “future advances” and the “initial debt or obligation.” § 201.08(1) (“If the mortgage ... subject to the tax levied by this section secures future advances ..., the tax shall be paid at the time of the recordation of the initial debt or obligation secured, excluding future advances; at the time and so often as any future advances is made, the tax shall be paid on all sums then advanced....”) Thus, the unenforceability .provision applies to future advances, not the initial loan disbursal.
Judge Martha Warner cogently explained the workings of section 208.08(1) as follows:
Section 201.08(1) provides for the tax to be paid on promissory notes and mortgages or other deeds of trust. It *437 divides them into two categories: (a) unsecured notes for the payment of money, and (b) notes or instruments secured by an instrument filed in the public records.
[[Image here]]
The first subsection makes no reference to a prohibition of enforcement of a promissory note prior to paying the tax on the note. The second subsection deals with notes involving recorded instruments where the taxes are paid at the time of recording. For mortgages permitting future advances, the amount of future advances is excluded in computing the tax due. The last sentence prohibits enforceability of a mortgage or instrument where an advance has been made after recording of the original mortgage, and no tax has been paid on the amount of the advance.
The state has a substantial interest in ensuring collection of taxes owed. That is why it requires evidence of the payment of the tax prior to recordation of any taxable instrument. The state has elected to enforce its taxes on unsecured promissory notes, however, through the use of its criminal laws and substantial penalties. See, e.g., § 201.17, Fla. Stat.
Glenn Wright Homes v. Lowy, 18 So.3d 693, 695-696 (Fla. 4th DCA 2009) (en banc) (emphasis added). The en banc panel of the Fourth District Court of Appeal then concludes:
The string of cases applying a prohibition against enforcement of promissory notes appear to misread the statute. See Rappaport [v. Hollywood Beach Resort Condo. Ass’n], 905 So.2d 1024 [(Fla. 4th DCA 2005)]; Bonfiglio fv. Banker’s Trust Co. of Cal.], 944 So.2d 1087 [ (Fla. 4th DCA 2006) ]; Somma v. Metra Electronics Corp., 727 So.2d 302 (Fla. 5th DCA 1999); Klein v. Royale Group, Ltd., 578 So.2d 394 (Fla. 3d DCA 1991); Silber [v. Cn’R Indus. of Jacksonville, Inc.], 526 So.2d 974 [ (Fla. 1st DCA 1988) ].
Id. at 696 (emphasis added). The bolded cases constitute the entirety of the authority relied upon by the majority for its “no payment of tax, no enforcement” position. See Majority Op. p.- 430. The reasoning of the authorities on which the majority relies is flawed.
Chapter 199 of the Florida Statutes, titled “Intangible Personal Property Taxes,” is similarly structured. Chapter 199 imposes “a one-time non-recurring tax of 2 mills on the just valuation of all notes, bonds and other obligations for the payment of money which are secured by a mortgage, deed of trust or other real property situated in this state.” § 199.133(1), Fla. Stat. (2005). The practical effect of this law, as it exists today, is to make the imposition of an intangible tax and a documentary tax on the participants to a mortgage transaction identical.[20] It is now simply one of two taxes, including the excise tax, which is “due and payable” to the Clerk of the Circuit Court at the time a mortgage on real property is tendered for recording. § 199,135(1), Fla. Stat. (2005).[21] As with the excise tax, an unpaid intangi *438 ble tax is collectible only through the use of criminal laws and the substantial penalties imposed and collected by the Florida Department óf Revenue. See § 199.282(1) (2005) Fla. Stat. (making willful failure to pay intangible tax a third-degree -felony); §. 199.282(2)-(3) Fla, Stat. (2005) (assessing penalties); § 12C-2.007, Fla. Admin. Code (assessing penalties and interest). Finally, analogous to the language of section 201.08(b) concerning future advances, section 199.282(4) states with respect to intangible taxes: “No mortgage; deed of trust, or other lien upon real property situated in this state shall be enforceable in any Florida court ... .until the nonrecurring tax imposed by this chapter ...•.has-been paid.” However, just like section 201.08(b), section 199.282(4) nowhere imposes an obligation on a judge of this or any other court to enforce collection of the tax.[22] ' ' ~ ’
There is no doubt, as Judge Warner eloquently wrote in Glenn Wright Homes, the state has a substantial'interest in ensuring the payment of taxes owed. The majority naturally shares that interest. However, as the statutory law and rules and regulations of the Florida Department of Revenue make clear, an unpaid excise or intangible tax on the principle amount of mortgage debt is collectible only through the use of the criminal laws, and substantial penalties imposed and collected by the Florida Department of Revenue. Id. at 695-696. In fact, to read Chapters 199 and 201 of the Florida Statutes to require the judges of this state to independently review mortgages and incorporated certificates of indebtedness for the payment of excise and intangible taxes before proceeding with actions filed before them raises serious ■ separation of powers questions under our scheme of government. The collection of taxes is an executive branch function. Div. of Alcoholic Beverages & Tobacco v. McKesson Corp., 574 So.2d 114, 117 (Fla.1991) (Overton, J., concurring). Under this state’s separation of powers doctrine, see Art. II, sec. 3, Fla. Const., the legislature cannot, short of a constitutional amendment, reallocate the balance of power among the branches of government. Chiles v. Children A, B, C, D, E, & F, 589 So.2d 260, 264 (Fla.1991).
Finally, in each of the cases cited by the majority to support its position that it must rise to a legislative command, the respective defendants themselves each raised the issue of unenforceability. See Solis v. Lacayo, 86 So.3d 1147 (Fla. Bd DCA 2012) (acknowledging debtor moved “to vacate final judgment, arguing that the documentary stamps had not been paid”); Somma v. Metra Elecs. Corp., 727 So.2d 302, 303 (Fla. 5th DCA 1999) (stating the defendant “moved for involuntary dismissal of the lawsuit, arguing that the trial court lacked authority to enforce the note because the taxes due on the note had not been paid”); Klein v. Royale Grp., Ltd., 578 So.2d 394, 395 (Fla. 3d DCA 1991) (“[T]he defendant-guarantor moved for an involuntary dismissal because of the plaintiffs failure to pay the necessary tax on the promissory note and affix the appropriate documentary stamps to the written obligation as required by section 201.208, *439 Florida Statutes (1989).”); Silber v. Cn’R Indus. of Jacksonville, Inc., 526 So.2d 974, 975 (Fla. 1st DCA 1988) (noting defendants moved to dismiss the plaintiffs cause of action to enforce the note, contending the note was unenforceable for failure to comply with section 201.08). The majority cites no case where a trial judge sua sponte has exempted real propr erty from the natural consequences of der faulted mortgage debt, nor have I been able to locate such a case. When the parties fail to raise an issue, I do not believe this court must search all records to find a basis upon which to' reverse.
For all these reasons, and as section 201.08(l)(b) expressly requires, I would credit all principal amounts due each" creditor on each mortgage and order the priorities of those liens chronologically by recording event as follows:
1. ■ Akbar Nikooie in the principal amount of $116,000 plus interest, based upon the recording of the modified $116,000 mortgage on February 23, 2006.
2. JPMorgan, as successor to Washington Mutual, in the full principal amount of $4,500,000 plus interest, based upon the filing of the lis pendens in its foreclosure action on January 12, 2007.
3. General Mortgage Associates, Inc. in the full principal amount of $3,500,000 plus interest, based upon the recording of its mortgage on January' 19, 2007.
4. Akbar Nikooie in the principal amount of $1,194,000 plus interest, based upon the Mortgage and Modification Agreement given to Akbar Nikooie by Jason Zabaleta, recorded on. June i, 2007.
Accordingly, I would affirm in part and reverse in part the judgment entered below.

. The majority "disagree[s] that any such affirmative duly exists or has been imposed by this opinion,” Slip. Op. at 16, but ffiat is precisely what the majority has done. If not, I ask, respectfully, why are we here?

. Excise taxes, also known as documentary stamp taxes, are governed by Chapter 20.1 of the Florida Statutes, titled "Excise Tax on Documents.”

.Intangible taxes are governed by Chapter 199 of the Florida Statutes, titled "Intangible Personal Properly Taxes."

. Until 2007, Chapter 199 also imposed an annual intangible tax levy on unsecured obligations for the payment of money, including unsecured promissory notes, stocks and bonds. This levy was repealed by the Florida Legislature in 2006. See Laws of Fla. Ch. 2006-312 (2006) (eff. Jan. 1, 2007). Thus, today, the tax is simply one of two taxes required to be paid on mortgage debt in this state.

. The Clerk of the Circuit Court is a constitutional officer, who is neither an agent nor employee of the circuit court. See Art. V, § 16, Fla. Const.

. Although custom and prudence have long dictated these taxes are paid in conjunction with the recording of the document, the Clerk of the Circuit Court, as well, has no obligation to collect the tax, §§ 201.11, 199.135, Fla. Stat. (2005). The Clerk of the Circuit Court must record any mortgage instrument presented to him or her for recording upon payment of the clerk’s per page service charge. §§ 28.222, 28.24, Fla. Stat. (2005); Op. Atty. Gen., 075-309, Dec..22,. 1975. In collecting these taxes, the Clerk merely is the on-site agent to receive funds for the Florida Department of Revenue. §§ 201.11(2), 199.135, Fla. Stat. (2005); Pignato v. Great W. Bank, 664 So.2d 1011, 1014-15 (Fla. 4th DCA 1996). The Florida Department of Revenue is the enforcing body.